J. BRADFORD MILLET, Appellant-Respondent, v. MILLARD M. SLOCUM et al., a Copartnership Doing Business as SLOCUM-DICKSON CLINIC, Respondents-Appellants.

Fourth Department, October 30, 1957.

*Roger H. Williams* and *Salvador J. Capecelatro* for appellant-respondent.

*Hugh R. Jones* and *Arthur W. Evans* for respondents-appellants.

McCURN, P. J.  The plaintiff, a physician, is a former partner in the Slocum-Dickson Clinic, a partnership of physicians practicing so-called " group medicine " in the city of Utica.

Plaintiff entered the partnership pursuant to an agreement dated January 1, 1949 covering a period of two years and on

January 1, 1951 entered into a new agreement unlimited as to time. Both agreements contained a covenant restricting plaintiff upon termination of his membership in the partnership from practicing in the city of Utica or its environs. The 1951 contract specifically provided that upon termination of his membership in the partnership plaintiff would not practice medicine or surgery in the cities of Utica or Rome or within a radius of 25 miles therefrom. In June, 1954 plaintiff was expelled from the partnership. On July 1 following his expulsion he brought this action praying, among other things, for a declaration in respect to his right to practice medicine and surgery within the cities of Utica and Rome and environs. The answer of the defendants joins in the prayer for declaration as to the rights of the parties and asks that plaintiff be enjoined from practicing medicine and surgery in the cities of Utica and Rome and within a radius of 25 miles therefrom for a period of five years in accordance with the terms of the restrictive covenant already mentioned.

The trial court has held that the restrictive covenant is unduly harsh and void as against public policy. It held, however, that in any event the expulsion of the plaintiff from the partnership was without justification and consisted of such a breach of the partnership agreement as not to entitle the defendants to the equitable relief of injunction. The defendants have appealed from the entire judgment and the plaintiff cross-appeals from certain portions thereof.

Plaintiff argues on his appeal that the restrictive covenant in his 1951 contract with the other members of the partnership was waived or terminated by reason of the fact that a new basic partnership agreement executed by all of the partners in 1953 made no reference to the restrictive covenant. It appears that since the beginning of the partnership the partners have operated under two contracts so far as their new members were concerned: (1) the so-called basic partnership agreement and (2) an additional agreement between the then existing partners and each new member at the time he is taken into the partnership. Examination of the several agreements in evidence discloses that in each instance the contract between the partnership and the individual member contained the same restrictive covenant as in plaintiff's contract with the other members. It discloses, also, that the so-called basic partnership agreement has never contained the restrictive covenant. Examination of the 1953 basic partnership agreement which was executed by all of the then members of the partnership, including the plaintiff, contains a provision that "all provisions in contracts here-

tofore made between the partnership and individual partners are continued, except as they conflict with the provisions hereof ''. We find no conflict as to the restrictive covenant nor any ambiguity in respect thereto and reach the conclusion that the trial court correctly held that the restrictive covenant in the 1951 contract has not been waived or terminated.

Contracts restricting competition by a former associate of a physician have received approval in the courts of this State and in other jurisdictions. (*Foster* v. *White,* 248 App. Div. 451, affd. 273 N. Y. 596; *Keen* v. *Schneider,* 202 Misc. 298, affd. 280 App. Div. 954; *Beam* v. *Rutledge,* 217 N. C. 670; *Whitehill* v. *Bradford,* 1 All E. R. 115 [1952].)

While each case is dependent upon its own particular facts and circumstances the validity of such a restrictive covenant depends generally upon whether it is necessary for the protection of the covenantee's property and good will or whether it is unreasonable, unjust or oppressive to the covenantor — whether it offends public policy. We see no difference in principle where physicians are concerned, whether the covenant is imposed upon an employer-employee relationship or a partnership relationship. The fact that the performance of such a covenant invokes personal hardship upon the promisor does not in itself invalidate the promise. No argument is made here that the time is too long or that the restricted area is too great.

It is to be noted that prior to the time the plaintiff joined the clinic in 1949 neither he nor his family had ever been residents of Utica. He had not practiced medicine or surgery any place in the State of New York. His prior medical practice had been in connection with a hospital in Boston, Massachusetts. The partnership operating the clinic had been in operation since 1938 and had earned a reputation for professional competence and had developed the good will of the community. It was inevitable that the plaintiff in the course of his duties as a partner in the clinic would serve patients of the clinic and would acquire their confidence and good will. It was foreseeable that if the plaintiff be left free to compete with the clinic in the event that his connection with the partnership should be terminated at some time in the future, that the remaining partners would thereby suffer a loss of patients and good will. A profession partakes on its financial side of a commercial business and its good will is often a valuable asset. (See *Styles* v. *Lyon,* 87 Conn. 23.)

The circumstances in this case are quite analogous to the circumstances in *Foster* v. *White* (248 App. Div. 451, affd. 273 N. Y. 596) and *Keen* v. *Schneider* (202 Misc. 298, affd.

280 App. Div. 954) and in our view the legal principles enunciated in those cases are likewise applicable here. The hardship imposed on the plaintiff is not when balanced with the needs of the defendants sufficient to invalidate the covenant. We conclude that the covenant is valid and that the judgment appealed from should be modified in that respect.

However, if the defendants would enforce the covenant by injunction they must justify their dismissal of the plaintiff from the partnership. Partners have no common-law or statutory right to expel or dismiss another partner from the partnership. They may, however, provide in their partnership agreement for expulsion under prescribed conditions which must be strictly applied. (See Mechem on Elements of Partnership [2d ed.], § 368; George on Partnership, p. 309.) The present partnership agreement provides: " (C) A partner may be expelled from the Clinic by a four-fifths vote in the regular manner of voting of the partnership, but excluding the vote of the expellee:

" 1. For cause   *   *   *

" 2. For the good of the partnership, which shall include incompatibility or any other factor or quality or relationship."

The defendants here expelled the plaintiff from the partnership for the good of the partnership based upon his alleged incompatibility. Whether or not there was incompatibility justifying expulsion within the meaning of the partnership agreement presented a question of fact for the trial court. (*Gray v. Shepard,* 147 N. Y. 177.)

The question of plaintiff's incompatibility hinges largely on his reluctance to participate in a proposed building program. The senior partners proposed the purchase of real estate and the erection thereon of a building for the use of the clinic. No definite estimate of the cost of such a venture had been computed but Dr. Charles Dickson, one of the proponents of the project, testified that he thought it would involve an expenditure of from $200,000 to $300,000. Various conferences over a period of months eventually resulted in all of the partners, except the plaintiff, agreeing to participate in such a building program. As the discussion progressed and plaintiff continued to question the wisdom of the proposal and to withhold his agreement to participate, it appears that the conflict in opinion caused concern as to plaintiff's status with respect to the restrictive covenant in case he became disassociated from the partnership. Early in June, 1954 the defendants decided to test plaintiff's compatibility by calling upon him to execute along with the other partners a so-called declaration of inten-

tion. The declaration of intention was a contract whereby each of the partners among other things declared his intention to participate fully in the development and execution of " any financial program for the implementation of such office building plan and to that end within his financial competence to accept and discharge all financial, professional and other personal obligations which may reasonably be expected of him by the other parties ". It also contained a reaffirmance of the restrictive covenant already discussed.

At a partnership meeting held on June 7, 1954 the plaintiff presented and read to the meeting a counter declaration of intention by the terms of which he agreed:

" 1. To do all I can by way of energy, time and ability to quickly bring into being a site satisfactory to the group and thereafter to consummate our group building program.

" 2. To support the building program to the extent of my proportionate interest in the partnership and to be more explicit, I would contribute my pro-rated equal share as divided among the number of full partners in the group."

Plaintiff refused to sign the declaration of intention which had been signed by the other members of the partnership, whereupon he was informed that the other partners had agreed in case of his refusal to ask for his resignation from the partnership. A motion was carried asking for his resignation, all voting in the affirmative except the plaintiff. Plaintiff then stated that his resignation would be forthcoming unless the group wanted to wait a month for further consideration. The suggestion of further consideration was turned down and plaintiff thereafter on June 11 submitted his written resignation to take effect six months hence.

According to the claim of the defendants, the plaintiff at a conference on June 10, 1954 made a statement to the effect that he intended to practice in Utica. The record presents a conflict in testimony as to whether such a statement was made. The trial court who saw and heard the witnesses refused to find that such a statement was made. However, at a meeting of the partnership on June 16 subsequent to plaintiff's resignation at which the plaintiff was given notice to attend and did attend, he was asked whether or not he intended to practice in Utica and replied that he had not made up his mind; he refused to give a categorical answer " Yes " or " No ". He was then advised that his resignation would not be accepted and a resolution was passed expelling him from the partnership.

We regard the action of the defendants at the meeting of June 7 at which time the plaintiff was asked to present his

resignation as the equivalent of an expulsion. He had no reasonable alternative to do otherwise than comply. (See *Brown v. Astor Supply Co.,* 4 A D 2d 177.) Despite the plaintiff's refusal to sign the declaration of intention his own so-called declaration of intention constituted a broad agreement to go along with the building program. His former opposition to the program, as we read the record, does not establish incompatibility. It appears to have been based upon an honest belief that the proposed building program was an improvident undertaking. In any event, it was a matter of business judgment involving among other things the financial ability of each individual partner to underwrite his proportionate share of a substantial investment and his willingness to assume the risk. It was obviously a matter upon which reasonable minds might differ. Moreover it was the subject of a new and independent agreement between the partners and not within the scope of the partnership agreement. There was no need to reaffirm the restrictive covenant for as had been indicated the restrictive covenant was already in force and effect. The test applied at the meeting of June 7 to determine the plaintiff's incompatibility, that is, whether he would sign or refuse to sign the declaration of intention in the form presented by the defendants, was not, in our view of it, a fair or proper test of his incompatibility within the purview of the partnership agreement.

We have not overlooked the arguments of defendants' counsel based upon the evidence as to plaintiff's expressed views upon financial arrangements both prior to and subsequent to the 1953 partnership agreement. We do not regard the plaintiff's attitude in these matters as unreasonable or arbitrary.

We conclude that the demand at the meeting of June 7 for plaintiff's resignation from the partnership and the subsequent expulsion at the meeting on June 16 constituted such a breach of the partnership agreement as not to entitle the defendants to the equitable relief of injunction to enforce the restrictive covenant. Likewise, plaintiff may not be deprived of his interest in the accounts receivable.

The judgment appealed from should be modified so as to declare the validity of the restrictive covenant and as so modified affirmed, without costs.

All concur. Present — McCurn, P. J., Vaughan, Kimball, Bastow and Goldman, JJ.

Judgment modified on the law and facts in accordance with the opinion and as modified affirmed, without costs of these appeals to any party.