417 P.2d 450

**LOVELACE CLINIC, an unincorporated association, Plaintiff-Appellee,**

**v.**

**John C. MURPHY, Defendant-Appellant.**

**No. 8048.**

Supreme Court of New Mexico.

Aug. 22, 1966.

McRae, Ussery, Mims, Ortega & Kitts, William E. Snead, Albuquerque, for appellant.

Botts, Botts & Mauney, Albuquerque, for appellee.

OPINION

LA FEL E. OMAN, Judge, Court of Appeals.

This case involves an appeal from a judgment granting injunctive relief to an association of medical doctors against the appellant, Dr. John C. Murphy.

The appellee, Lovelace Clinic, will be referred to as the clinic, and the appellant will be referred to as Dr. Murphy.

The clinic was founded in Albuquerque, Bernalillo County, New Mexico, prior to the year 1950, when Dr. Murphy first became associated with the clinic as a Dermatologist. Prior to this association he had completed his medical education, including two and one-half years of residency training in dermatology.

Upon becoming associated with the clinic in January, 1950, he and the clinic entered into a written contract of employment for a period of five years. In January, 1955, a like agreement was entered into between the parties for another five-year period. On January 16, 1960, the third like employment agreement was entered into between the parties for another five-year period.

On January 31, 1964, Dr. Murphy, at his own instance, terminated his association with the clinic and opened his own offices for the practice of dermatology in Albuquerque on February 2, 1964.

In all three of the successive employment contracts there appeared the following agreement, which is quoted from the contract of January 16, 1960:

"9. That the Staff Member, upon any termination of his employment, during a period of three (3) years thereafter will not, in Bernalillo County, New Mexico, engage or be engaged either directly or indirectly in behalf of himself or in behalf of others in the practice of medicine, or surgery, general or special, and that during such period and within said limits, he will not, in anywise, be connected with any Clinic, Hospital, Sanitarium, Sanatorium, physician's or surgeon's office without the written consent of the Clinic being first had and obtained, and no termination or modification of this contract or any part thereof, by whatsoever means the same might be or might be construed to be affected, shall in anywise change the provisions of this paragraph, or release the Staff Member from the terms hereof unless this paragraph be specifically referred to in writing in such way as clearly to indicate the purpose of the Clinic to release the Staff Member from the terms hereof;"

The affairs of the clinic were directed by a board of governors pursuant to Amended Articles of Association made and executed on October 1, 1953, and Dr. Murphy was one of the eighteen doctors executing these amended articles. Early in 1963 he became a member of the board of governors and continued in this capacity until shortly before his termination with the clinic on January 31, 1964.

Dr. Murphy has at all times since 1950 restricted his practice to his specialty of dermatology. Prior to opening his own offices on February 2, 1964, he was advised by the clinic that he would be expected to comply with the provisions of paragraph 9 of the agreement of January 16, 1960, and at no time has the clinic consented to his practice of medicine in Bernalillo County during the three-year period commencing with the termination of his employment by the clinic.

At the conclusion of the trial, judgment was entered for the clinic restraining and enjoining Dr. Murphy from practicing medicine, directly or indirectly, in Bernalillo County from November 29, 1965, the date of the judgment, to and including January 31, 1967. It is from this judgment that he has appealed.

Sixteen separate points relied upon for reversal have been set forth in the brief in chief. However, they have been grouped under three separate points of argument,

under which numerous sub-points have been stated and argued.

The gist of the entire argument is that the court's conclusion that the provisions contained in paragraph 9 of the agreement were reasonable, and thus valid and enforceable, was erroneous because:

1. The only legitimate purpose of such a contract provision is that of preventing the employee from taking unfair advantage of his employer, such as divulging "trade secrets," "soliciting customers," or indulging in other unfair acts.

2. The provisions of paragraph 9 of the agreement are not reasonably necessary to protect any legitimate interests of the clinic, and are therefore, invalid.

3. The main and evident purpose of the provisions of paragraph 9 of the agreement is to eliminate or restrict competition, and are, therefore, invalid.

4. The effect of the provisions of paragraph 9 of the agreement is to force employees of the clinic to remain in the employ of the clinic, and are, therefore, invalid.

5. The evidence demonstrates that the hardships on Dr. Murphy far outweigh the benefits to the clinic if the provisions of paragraph 9 of the agreement are enforced.

There is evidence from which it might be found and concluded that Dr. Murphy did engage in unfair acts, but, disregarding such, we cannot agree that only those legally-enforceable rights, which exist independent of the covenant, are to be enforced. This reasoning could lead only to the conclusion that a covenant like the one here involved is meaningless, and that no legal rights and duties can arise from such a covenant.

This reasoning is refuted by every single reported case cited by either of the parties, or which we have been able to find, which has involved the question of enforcement of like covenants or agreements entered into by a physician or surgeon. The parties have cited, and we have been able to find, only four reported cases in the United States in which like agreements by physicians or surgeons have not been enforced.

In Droba v. Berry, Ohio Com.Pl., 139 N.E.2d 124, enforcement of the covenant was refused because of the unreasonableness of the territory covered in view of the nature and location of the practices involved.

In Rakestraw v. Lanier, 104 Ga. 188, 30 S.E. 735, enforcement of the covenant was refused because the restraints were "larger than were necessary for the protection of the promisee." The court observed that the contract would have been enforced had the time limitation been restricted to the lifetime of the defendant in error, or to the time he engaged in the practice of his profession in Screven County.

In Mandeville v. Harman, 42 N.J.Eq. 185, 7 A. 37, enforcement of the covenant was refused because of the lack of any time limitation on the duration of the covenant.

In Melrose v. Low, 80 Utah 356, 15 P.2d 319, injunctive relief was denied because it did not appear from the record "that Dr. Melrose is himself engaged in or intends to engage in the practice of medicine in Carbon County during the time stated in the contract," and further because Dr. Melrose may not have been injured, even if they were in competition.

The relief sought was not denied in any one of these four cases because the rights sought to be enforced did not exist independently of the contract provisions. In none of the many cases, in which like agreements have been enforced against physicians and surgeons, was the decision based on a legally-enforceable right existing independently of the contract. We shall not attempt to cite all of the many cases upholding as reasonable contract provisions similar to those here involved, but some of the more recent cases are Mabray v. Williams, 132 Colo. 523, 291 P.2d 677; Marshall v. Covington, 81 Idaho 199, 339 P.2d 504; McCallum v. Asbury, 238 Or. 257, 393 P.2d 774; Millet v. Slocum, 4 A.D.2d 528, 167 N.Y.S.2d 136. See also Dodd, Contracts Not to Practice Medicine, 23 B.U.L.Rev. 305, 317 (1943); 58 A.L.R. 156; 41 A.L.R. 2d 15, 98; 43 A.L.R.2d 94, 171.

As stated in the annotation in 41 A.L.R. 2d 24:

" * * * unless restricted by some agreement with his former employer, the employee's right to compete in business with such former employer is the same as that of a stranger to the contract of employment, subject to the qualification that a former employee is precluded from using for his own advantage, and to the detriment of his former employer, information or trade secrets acquired by or imparted to him in the course of his employment. * * *"

All of the physician and surgeon cases either expressly hold or clearly indicate that the rights and duties created by the contract of employment or association are enforceable, if the restrictions thus imposed on the employee or the associate are reasonable. The question of reasonableness is not related to or dependent on the existence of a legally-enforceable right or duty independent of the rights and duties created by the contract of employment or association.

Although not involving covenants by a physician or surgeon, a review of the cases of Excelsior Laundry Co. v. Diehl, 32 N.M. 169, 252 P. 991, and Nichols v. Anderson, 43 N.M. 296, 92 P.2d 781, demonstrates that this court does take the view that restrictive covenants in employment contracts, wherein the restraints imposed

are reasonable, create legally-enforceable rights and duties apart from the rights and duties that would be so inforced in the absence of such covenants.

The argument by Dr. Murphy that the provisions of paragraph 9 of the agreement are not reasonably necessary to protect any legitimate interests of the clinic is to disregard the rights created by the agreement itself. The purpose of the agreement was to create legally-enforceable rights and duties between the parties.

The arguments that the provisions of paragraph 9 of the agreement are invalid, because their purpose is to eliminate or restrict competition and to force employees of the clinic to remain in the employ of the clinic, likewise fail to persuade us. There is no doubt that this type of covenant tends to some extent to eliminate or restrict competition, and in many instances may operate as some compulsion on the part of the employee to remain in the employ of the employer. These are usually the main purposes of such covenants, and these are legitimate purposes, so long as the restrictions are reasonable.

As was stated by the court in Granger v. Craven, 159 Minn. 296, 199 N.W. 10, 52 A.L.R. 1356, a case involving the question of the enforceability of a covenant by a physician who had been in charge of the ear, nose and throat department of his employer:

"Such an employee as was defendant gets an acquaintance and standing with his employer's patients from which, even though he is an average man, he is bound to reap substantial benefit the moment he leaves his employer's office and opens his own in the same vicinity. Many of the old patients will have come to like him and trust him. They will follow him even though he goes so far as to urge them all to remain with his former employer. * * * The fact that the good will of patients or customers belongs to the employer entitled him to require an employee, within reasonable limits, so to conduct himself after the termination of the employment as not to make improper use of the opportunity his employment has given him to acquire that good will."

The public has an interest in seeing that competition is not unreasonably limited or restricted, but it also has an interest in protecting the freedom of persons to contract, and in enforcing contractual rights and obligations. The Idaho court in the case of Marshall v. Covington, supra, had the following to say in this regard concerning these covenants:

"* * * From these numerous decisions the general rule emerges that such covenants will be enforced when they are reasonable, as applied to the covenantor, the covenantee, and the general public; they are not against public policy, and any detriment to the public interest in the

possible loss of the services of the covenantor is more than offset by the public benefit arising out of the preservation of the freedom of contract."

The argument that the court should not enforce the provisions of paragraph 9 of the agreement by enjoining Dr. Murphy from practicing medicine in Bernalillo County until the expiration of the three-year limitation, because the hardships thus imposed upon him far outweigh the benefits to the clinic, is not persuasive. He accepted the benefits of his association with the clinic for fourteen years. He entered into three separate contracts for a period of five years each, and each of these contracts contained the covenant on his part from which he now seeks to be relieved. He knew that if and when he terminated his association there would likely be a burden upon him in relocating his practice, or in refraining from engaging in the practice of medicine in Bernalillo County for a period of three years. He chose to accept the burdens as well as the benefits of his contract.

We recognize that equity may refuse to enforce such contracts if great hardships will thus be imposed on the covenantor and relatively small benefits would thereby accrue to the covenantee. However, as shown by the cases cited above, these covenants by physicians or surgeons have been almost unanimously enforced, and the language of the courts indicates they would have been enforced in all instances had the restrictions been reasonable and the question of their enforceability been properly presented to the courts.

The limitations as to time and area in the covenant under consideration are clearly within the limitations upheld in the many cases above cited and referred to in the A.L.R. annotations.

The Oregon court, in passing on a like contention in the case of McCallum v. Asbury, supra, after recognizing that courts of equity may refuse to enforce contracts if great hardships result on one side without compensating benefits on the other, had the following to say:

"Obviously, it is a serious matter to uproot a professional man from the community in which he has developed his practice and served his profession. However, a breach of a covenant solemnly bargained for and entered into between thoughtful men of affairs is also a serious matter."

We find nothing in the facts in this case to warrant us in holding that the trial court erred in the exercise of its equitable powers by enjoining Dr. Murphy from doing that which he had covenanted not to do.

We have considered all the arguments and reasons urged upon us by Dr. Murphy, but we find no reason for reversing the judg-

**652**

ment of the trial court. The essential findings of the trial court are supported by the evidence, and the court's conclusions that the covenant was reasonable and defendant should be restrained from practicing medicine in Bernalillo County, New Mexico, until February 1, 1967, are supported by the findings.

The judgment should be affirmed.

It is so ordered.

CHAVEZ, MOISE and COMPTON, JJ., and WALDO SPIESS, J., Court of Appeals, concur.