IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2015-NMCA-064

Filing Date:  March 25, 2015

Docket No. 33,475

KIDSKARE, P.C.,

      Plaintiff-Appellee,

v.

TYLER MANN,

      Defendant-Appellant.

APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY
Sandra A. Price, District Judge

Jane B. Yohalem
Santa Fe, NM

for Appellee

Law Offices of Michael E. Mozes, P.C.
Michael E. Mozes
Albuquerque, NM

for Appellant

OPINION

**WECHSLER, Judge.**

**{1}** This case is an appeal by a dentist, Dr. Tyler Mann, who was found by the district court to have violated the covenant not to compete in his employment contract with his former employer, KidsKare, P.C. (KidsKare). On appeal, Dr. Mann raises four claims of error: (1) KidsKare lacked standing to enforce the covenant not to compete; (2) the covenant not to compete was unenforceable as written and was not amenable to the modification made by the district court; (3) KidsKare waived its right to enforce the covenant; and (4) prior breach of the covenant by KidsKare rendered the covenant unenforceable. We hold that, contrary to the argument of Dr. Mann, the covenant not to compete was amenable to

1

modification by the district court because the agreement explicitly provided for amendment of any unenforceable provision and enforcement to the full extent deemed reasonable and enforceable by the reviewing court. Nor are we persuaded by Dr. Mann's other arguments. We therefore affirm the district court. Also, we award attorney fees to KidsKare for this appeal and remand to the district court for proceedings consistent with this holding.

## BACKGROUND

**{2}** Dr. Mann was hired by KidsKare in May 2006. At that time, KidsKare was a chain of dental service providers with several offices in New Mexico. As part of the employment agreement between the parties, Dr. Mann agreed that, after termination of his association with KidsKare, (1) he was not to provide the type of dentistry that he performed for KidsKare within one hundred miles of any KidsKare office for one year, and (2) his practice could not consist of more than ten percent Medicaid or child patient services if that practice was within one hundred miles of a KidsKare office or within one hundred miles of an area that provided a substantial number of patients to a KidsKare office.[1]

**{3}** In January 2010, Dr. Mann submitted his notice of resignation to KidsKare. Four days after his final day at KidsKare, on April 12, 2010, Dr. Mann opened an office three miles from the KidsKare office where he had practiced. On May 10, 2010, KidsKare filed an action to enforce the covenant not to compete. In its complaint, it asserted that Dr. Mann violated the provision that precluded him from practicing the same type of dentistry within one hundred miles of a KidsKare office and within one year of resignation.

**{4}** The district court bifurcated the trial. The court first concluded that clause one of the covenant not to compete was reasonable as to the twelve month time period but that the one hundred mile restriction from any KidsKare office was overbroad and, therefore,

---

[1]The text of the "Covenant Not to Compete" found at Section 4.1 of the employment agreement, provided, in pertinent part:

> Associate agrees that for a twelve (12) month period following the date that Associate's employment terminates for any reason, including, without limitation, termination by Employer without cause or resignation by Associate . . . , Employee shall not provide any professional dental services of any of the types of dentistry Employee provided while employed by Employer within a radius of one hundred (100) miles of any of Employer's offices; and, for a period of five (5) years following the date that Associate's employment terminates, children and/or Medicaid patient dental services shall not exceed ten percent (10%) of the total patients in their future practice of dentistry within one hundred (100) miles of any area that has KIDSKARE P.C. offices and/or within one hundred (100) miles of an area that provides substantial patients to KIDSKARE P.C. for dental services.

unenforceable as written. As its remedy, the district court reformed the distance provision of clause one by reducing the radius to thirty miles, finding that the covenant was thus enforceable.

**{5}** After a trial on the merits, the district court found that Dr. Mann breached the covenant not to compete by operating an office approximately three miles from the KidsKare office within one year of leaving his employment and providing services from that office similar to those he provided at KidsKare. The district court entered a total judgment in the amount of $88,639.40 in favor of KidsKare. It awarded damages in the amount of $44,449.40, a figure based on the amount billed by Dr. Mann for services rendered within one year of leaving KidsKare to patients who had been patients of KidsKare, excluding patients who were referred to Dr. Mann by dentists, whether employed by KidsKare or not. It also awarded attorney fees in the amount of $44,140, and post-judgment interest at the rate of 8.75%.

**STANDING**

**{6}** Dr. Mann argued unpersuasively to the district court for summary judgment that KidsKare lacked standing to enforce the covenant not to compete. He now argues that the district court committed error. We review a summary judgment ruling de novo. *Self v. United Parcel Serv., Inc.*, 1998-NMSC-046, ¶ 6, 126 N.M. 396, 970 P.2d 582.

**{7}** Dr. Mann relies upon 42 U.S.C. § 1396a(a)(23) (2012), a section of the Medicaid Act that provides strict freedom of choice for Medicaid patients to choose treatment from any participating provider. *See Planned Parenthood of Ind., Inc. v. Comm'r of Ind. State Dep't of Health*, 699 F.3d 962, 974 (7th Cir. 2012) ("Section 1396a(a)(23) mandates that . . . . Medicaid patients have the right to receive care from the qualified provider of their choice."). Under the pertinent part of this section, a state plan for medical assistance must:

> [P]rovide that . . . any individual eligible for medical assistance (including drugs) may obtain such assistance from any institution, agency, community pharmacy, or person, qualified to perform the service or services required (including an organization which provides such services, or arranges for their availability, on a prepayment basis), who undertakes to provide him such services[.]

Section 1396a(a)(23). Dr. Mann is correct that, under this section, health care providers do not have the right to enforce the freedom of choice provision intended to protect Medicaid recipients. *See RX Pharmacies Plus, Inc. v. Weil*, 883 F. Supp. 549, 554 (D. Colo. 1995) (stating that Section 1396a(a)(23) does not confer any enforceable rights on Medicaid providers). Thus, we agree with Dr. Mann that KidsKare is unable to sue under Section 1396a(a)(23).

**{8}** However, KidsKare has not attempted to enforce Section 1396a(a)(23), and we do

3

not see why it would attempt to do so under the facts of this case. Perhaps a party in Dr. Mann's position might seek to prevent the enforcement of a covenant not to compete, claiming that such a covenant violated Section 1396a(a)(23). But, as noted by both KidsKare and Dr. Mann, the only intended beneficiaries of the freedom of choice conferred by Section 1396a(a)(23) are Medicaid recipients. Thus, Dr. Mann, like KidsKare, lacks standing to enforce Section 1396a(a)(23) as neither party is a medicaid recipient. Simply stated, Section 1396a(a)(23) is not applicable to this case.

## ENFORCEABILITY OF COVENANT NOT TO COMPETE

**{9}** Dr. Mann also contends that the district court committed error when it modified the covenant not to compete and found it thus enforceable. We review the findings of fact of the district court under a deferential, substantial evidence standard and review the application of the law to the facts de novo. *Ponder v. State Farm Mut. Auto. Ins. Co.*, 2000-NMSC-033, ¶ 7, 129 N.M. 698, 12 P.3d 960.

**{10}** Covenants not to compete that restrict employment present competing principles: the freedom to contract and the freedom to work. Furthermore, the public has an interest not only "in protecting the freedom of persons to contract and in enforcing contractual rights and obligations[,]" but also in "seeing that competition is not unreasonably limited or restricted[.]" *Lovelace Clinic v. Murphy*, 1966-NMSC-165, ¶ 23, 76 N.M. 645, 417 P.2d 450. Our Supreme Court has held that a covenant not to compete is "enforceable, if the restrictions thus imposed . . . are reasonable." *Id.* ¶ 18. "Whether there is a reasonable restraint depends on the facts of a particular case[.]" *Bowen v. Carlsbad Ins. & Real Estate, Inc.*, 1986-NMSC-060, ¶ 4, 104 N.M. 514, 724 P.2d 223. Covenants not to compete with reasonable restraints will be enforced when "they are not against public policy, and any detriment to the public interest in the possible loss of the services of the covenantor is more than offset by the public benefit arising out of the preservation of the freedom of contract." *Lovelace*, 1966-NMSC-165, ¶ 23 (internal quotation marks and citation omitted).

**{11}** Dr. Mann argues that the covenant was not amenable to modification under New Mexico law. According to Dr. Mann, New Mexico case law does not provide for reformation of terms of a covenant not to compete beyond, when possible, striking an independent clause found to be unreasonable. He also argues that, not only could the district court not alter the overly-broad distance provision in the first clause of the covenant, but, further, that because the second clause of the covenant was also overly broad and, therefore, unreasonable, the entire covenant not to compete should be "voided." Because we conclude that an alternative basis to alter the covenant not to compete allows for disposition of this case, we do not reach Defendant's argument regarding New Mexico case law.

**{12}** As noted by the district court, the employment agreement between the parties specifically provided for the amendment of any provision found by a court to be "overbroad or otherwise unenforceable[.]" It further provided for the enforceability of the agreement against Dr. Mann "to the maximum extent deemed reasonable and enforceable by such

court." [2] The employment agreement additionally provided that all provisions not found to be "invalid, illegal or unenforceable, in whole or in part" were to remain intact and enforceable.[3] These terms make clear that, as part of their bargain, Dr. Mann and KidsKare agreed that the covenant not to compete would not fail if provisions within it were found to be unreasonable. Instead, they specifically agreed to the type of reformation performed by the district court. Reformation of unreasonable clauses was an aspect of the bargain of the parties and consistent with their mutual intent as expressed by the employment agreement. *See Lovelace*, 1966-NMSC-165, ¶ 20 ("The purpose of the agreement was to create legally-enforceable rights and duties between the parties.")

**{13}**     We note that Dr. Mann is a highly trained medical professional. Like the doctor in *Lovelace*, Dr. Mann accepted the benefits of the association with his employer knowing the corresponding burdens if and when his employment terminated. *See id.* ¶ 24 ("He knew that if and when he terminated his association there would likely be a burden upon him . . . . He chose to accept the burdens as well as the benefits of his contract."). Nothing in the record suggests that Dr. Mann did not enter into the employment agreement with KidsKare freely and with full knowledge of the post-employment restrictions. We do not perceive any lack of bargaining power on the part of Dr. Mann, nor has he argued that lack of bargaining power or sophistication should affect the result in this case. In fact, Dr. Mann has not argued any grounds on which Section 5.2 of the employment agreement, which explicitly provides for reformation of the agreement, should not be enforced.

**{14}**     Thus, the covenant not to compete was amenable to reformation under the terms of the employment agreement. We therefore turn to the reasonableness of the terms of the covenant as applied by the district court, restrictions of one year and thirty miles. As to the reasonableness of the one-year restriction, evidence was presented that adult patients of KidsKare visit once per year, and Dr. Mann conceded that a restriction of one or two years is frequently found to be reasonable. The district court could thus conclude that the one-year

---

[2]In full, Section 5.2 of the employment agreement reads:

Employer and Associate further agree that if any provision of this agreement is held in a final judgment or determination of any court to be overbroad or otherwise unenforceable in any respect, such provision shall be-[sic] deemed to be amended, and shall be binding upon Employee to the maximum extent deemed reasonable and enforceable by such court.

[3]In full, Section 5.3 reads:

Severability. In the event that any provision of this Agreement is held invalid, illegal or unenforceable, in whole or in part, the remaining provisions of this Agreement shall not be effected [sic] and shall continue to be valid and enforceable. (Emphasis omitted).

restriction was reasonable. *See Ponder*, 2000-NMSC-033, ¶ 7 ("Substantial evidence is such relevant evidence that a reasonable mind would find adequate to support a conclusion." (internal quotation marks and citation omitted)). The one-year restriction is further supported in applicable case law. *See Lovelace*, 1966-NMSC-165, ¶¶ 24, 26, 29 (holding that a three-year restriction on a doctor was reasonable and enforceable). The thirty-mile restriction was also supported by the substantial evidence that approximately 90% of the patients of the Farmington office of KidsKare came from within a thirty-mile radius.

**{15}** Dr. Mann does not argue that the one-year time or thirty-mile restrictions are unreasonable or unsupported. Instead, Dr. Mann argues that the district court erred in concluding that: (1) the covenant not to compete was related to a legitimate business interest, and (2) enforcement of the covenant not to compete did not violate the public interest.

**{16}** Neither argument is persuasive. In *Lovelace*, a medical professional left employment with a clinic and, as a result, violated a covenant not to compete. 1966-NMSC-165. Our Supreme Court noted that an employer has a legitimate business interest in protecting the goodwill of its patients. *Id.* ¶ 22. Like the clinic in *Lovelace*, KidsKare had a legitimate interest in protecting its business from competition by Dr. Mann, who became known to KidsKare patients through his employment. Dr. Mann focuses his argument on the harm to the public from enforcement of the covenant not to compete, arguing that enforcement would deprive underserved Medicaid dental patients of an available practitioner. However, evidence was presented that a Medicaid patient could get an appointment at KidsKare in Farmington within one business day of making a request. The district court's finding that Medicaid patients who seek dental care are not underserved due to an insufficient number of providers is therefore supported by substantial evidence in the record. *See Ponder*, 2000-NMSC-033, ¶ 7 ("Substantial evidence is such relevant evidence that a reasonable mind would find adequate to support a conclusion." (internal quotation marks and citation omitted)). Because enforcement of the covenant not to compete would not cause the harm to the public asserted by Dr. Mann, we agree with the district court that the reformed covenant does not violate public policy. As reformed by the district court, the covenant not to compete was reasonable and enforceable.

## WAIVER BY ESTOPPEL

**{17}** Dr. Mann argues that the district court erred in concluding that KidsKare did not waive its right to enforce the covenant not to compete. He contends that referrals to him from KidsKare dentists after he left employment constituted waiver by estoppel on the part of KidsKare. KidsKare contends that waiver by estoppel is inapplicable because it filed suit against Dr. Mann to enforce the covenant not to compete approximately thirty days after Dr. Mann opened his competing office.

**{18}** "[W]aiver by estoppel is present where a party's actions reasonably lead the other party to believe waiver has occurred and that other party is prejudiced by the belief." *Atherton v. Gopin*, 2012-NMCA-023, ¶ 13, 272 P.3d 700. The district court found that Dr.

6

Mann could not have reasonably believed that KidsKare intended to waive its right to enforce the agreement. Substantial evidence in the record supports this finding. A number of the fourteen documented referrals on which Dr. Mann relies came from a dentist at the KidsKare office during a time period when the only dentist who could make those referrals was Dr. Connolly, a good friend and housemate of Dr. Mann. Also, KidsKare filed suit against Dr. Mann approximately thirty days after Dr. Mann left his position at KidsKare. That complaint specifically asserted that Dr. Mann violated the first clause of the covenant not to compete and sought injunctive relief, damages, and attorney fees and costs pursuant to that violation. Both the source of at least some of the referrals relied upon by Dr. Mann and the lawsuit filed by KidsKare support the finding by the district court that Dr. Mann could not have reasonably believed that KidsKare intended to waive its rights under the covenant not to compete. Because waiver by estoppel required such a belief, Dr. Mann's argument fails.

**BREACH OF CONTRACT**

**{19}** Dr. Mann argues that the failure by KidsKare to provide adequate staff and supplies, and the referral of patients by KidsKare to Dr. Mann, constituted material breaches of the contractual employment agreement that excused Dr. Mann from further performance, including adherence to the covenant not to compete.

**{20}** A material breach of a contract excuses the non-breaching party from further performance under the contract. *Famiglietta v. Ivie-Miller Enters., Inc.*, 1998-NMCA-155, ¶ 14, 126 N.M. 69, 966 P.2d 777. This Court has described a material breach as the "failure to do something that is so fundamental to the contract that the failure to perform that obligation defeats an essential purpose of the contract." *Id.* ¶ 17 (internal quotation marks and citation omitted). "[T]he materiality of a breach is a specific question of fact." *Id.* ¶ 16.

**{21}** The employment agreement between KidsKare and Dr. Mann required KidsKare to furnish Dr. Mann with adequate equipment, supplies, and staff, as determined to be necessary and appropriate by KidsKare. The district court found that KidsKare and Dr. Mann sometimes disagreed as to the appropriate levels of equipment, staff, and supplies, but that the employment agreement left those determinations to KidsKare. The district court also found that the substantial salary and production bonuses KidsKare paid to Dr. Mann was evidence that KidsKare had fulfilled its obligation to materially support Dr. Mann's practice.

**{22}** Evidence in the record supports the district court's findings. Dr. Mann received a production bonus for 2009 of $110,000, equal to 55% of his base salary. His projected bonus for 2010, the year he left KidsKare, was similarly large. Testimony was presented that KidsKare spent more on supplies for Dr. Mann than any other dentist. A KidsKare dentist testified that her practice was not limited by lack of equipment or supplies. Testimony was also presented that the KidsKare office was adequately staffed.

**{23}** With regard to Dr. Mann's argument that referrals from KidsKare constituted a

material breach of the employment agreement, Dr. Mann does not cite any provision in the contract that forbids referrals to him. This argument is more properly presented as an argument in support of waiver by KidsKare, as Dr. Mann did, and which we addressed above.

**{24}** The evidence supports the district court's conclusion that KidsKare did not materially breach the employment agreement and that Dr. Mann was not excused from the obligations of the covenant not to compete on that basis.

**ATTORNEY FEES FOR APPEAL**

**{25}** KidsKare requests attorney fees for this appeal, noting that the employment agreement between the parties provides for reasonable attorney fees and costs for any action to enforce its rights. We agree that this provision entitles KidsKare to attorney fees for this appeal. *See Famiglietta*, 1998-NMCA-155, ¶ 27 (awarding attorney fees for an appeal where a contract called for attorney fees upon default by either party).

**CONCLUSION**

**{26}** We affirm the judgment of the district court. We award attorney fees for this appeal and remand to the district court for proceedings consistent with this holding, including a determination of appropriate attorney fees.

**{27}   IT IS SO ORDERED.**

_____
**JAMES J. WECHSLER, Judge**

**WE CONCUR:**

_____
**MICHAEL E. VIGIL, Chief Judge**

_____
**RODERICK T. KENNEDY, Judge**