This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

### IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-37684**

**SOUTHWEST PREFERRED FINANCIAL, INC.,**

Plaintiff-Appellant,

v.

**JASON BOWERMEISTER, ANGELA BOWERMEISTER, and AMERICAN WEST GOLD MERCHANTS, INC.,**

Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**Steven Blankinship, District Judge**

Martin & Lutz, P.C.
David P. Lutz
Las Cruces, NM

for Appellant

Overstreet & Associates, P.C.
S. Thomas Overstreet
Alamogordo, NM

for Appellees

### MEMORANDUM OPINION

**YOHALEM, Judge.**

**{1}** Plaintiff Southwest Preferred Financial, Inc. (Southwest) appeals from the judgment of the district court dismissing all seven of Southwest's claims following a bench trial. Southwest brought this action against Jason Bowermeister, a former employee, and American West Gold Merchants, Inc., (American West) a business started by Bowermeister, alleging Bowermeister breached his 2013 agreement not to

compete, which Southwest requires of all its employees, and breached his fiduciary duty of loyalty to his employer. Concluding that the district court correctly applied the law on both Southwest's contract claim for violation of its noncompete agreement and its common law claim for breach of the duty of loyalty, and that Southwest failed to preserve for appeal its claim that a 2012 noncompete agreement should be enforced instead of the 2013 agreement, we affirm.

**BACKGROUND**

{2}     Because Southwest does not challenge the district court's findings of fact, we rely on those findings in describing the events at issue in this case. *See Seipert v. Johnson*, 2003-NMCA-119, ¶ 26, 134 N.M. 394, 77 P.3d 298 ("An unchallenged finding of the trial court is binding on appeal.").

{3}     Southwest was initially organized in 2001 as a limited liability company, Southwest Preferred Financial Services, LLC, that owned stores located in Alamogordo, Deming, Farmington, Hobbs, Las Cruces, and Roswell, New Mexico, and in Texas, as well as maintaining an online presence. Southwest engaged in a variety of businesses (differing from location to location), including purchasing precious metals, hosting parties, fundraising, making loans (including installment and pay loans), mannequin advertising, sign holding, and sign walking.

{4}     Southwest hired Bowermeister on September 1, 2012, to fill an entry-level, unskilled position at Southwest's gold and precious metals store in Alamogordo. Bowermeister's duties involved working the counter (purchasing gold and other precious metals for the base metal value), opening and closing the store, and supervising a sign walker. Bowermeister was an at-will employee; he was paid on an hourly basis, and, apart from a written agreement not to compete, he had no written employment contract.

{5}     The district court found that Bowermeister was given only basic and generalized training by Southwest. While he received some training on how to test to determine if an item is genuine gold, silver, or other precious metals, assess precious metal weight, and determine base metal value, the court found that such information was generally a matter of public record and was readily available on the internet.

{6}     In 2013, Southwest reorganized its business, changing its legal structure from an LLC to an S Corporation and changing its name to reflect its new status. In June 2013, Southwest expanded Bowermeister's job duties and changed the location of his work from Alamogordo to Las Cruces. His employment remained at will and his hourly wage was not increased. Southwest required Bowermeister to sign a significantly more expansive noncompete agreement (the 2013 noncompete agreement) with Southwest Preferred Financial, Inc., the corporation that is the plaintiff in this case. The 2013 noncompete agreement, like the original 2012 noncompete agreement, prohibited Bowermeister from working for or forming any competitive business within twenty-five miles of anywhere Southwest had a physical store and also expanded the geographical scope of the prior agreement to include anywhere Southwest has "an internet

presence." "Competitive business" was defined by the 2013 noncompete agreement to include any of the kinds of businesses Southwest engaged in (purchasing precious metals, hosting parties, fundraising, loans, mannequin advertising, sign holding, and sign walking), whether or not Bowermeister had done any work in that particular business during his employment with Southwest. The precious metals business was construed by Southwest to prevent a former employee from taking a job involving the handling of precious metals in any way, including selling jewelry. Bowermeister was prohibited from engaging in or being employed by the businesses listed for three years following the termination of his employment with Southwest.

{7}     Sometime in 2014, Bowermeister violated company policy by purchasing for himself a gold coin offered for sale to Southwest. Initially, Bowermeister quoted the customer the precious metal value of the coin, in accordance with Southwest's purchasing policy. When the customer refused Southwest's offer as too low, Bowermeister purchased the coin for himself, paying a higher price based on the coin's numismatic value. Southwest did not generally purchase coins for their numismatic value, primarily operating as a precious metal recycler.

{8}     Southwest's owners discussed the coin purchase with Bowermeister. Bowermeister acknowledged that the purchase was improper, that he had made a mistake, and assured them it would not happen again. Aside from counseling Bowermeister about the incident, Southwest did not discipline him further. There was no evidence Southwest sought to repurchase the coin from Bowermeister or that Southwest suffered any loss. Although Southwest alleged in its complaint that Bowermeister engaged in a pattern of self-dealing beginning with the coin purchase, the district court's findings identify only this single incident and Southwest's brief on appeal focuses solely on this incident. The district court found that Bowermeister's purchase of the coin was improper and was in competition with Southwest.

{9}     On July 12, 2014, Bowermeister resigned from his position with Southwest to take a job as a correctional officer. He soon resigned from that job, however, due to a physical disability, and later formed American West with his father-in-law. American West bought and sold precious metal, as well as purchasing coins for their numanistic value. Bowermeister did not dispute that American West's business model was in competition with Southwest.

{10}     American West opened to the public on January 1, 2015, about six months after Bowermeister left his employment with Southwest. Southwest's Alamogordo location happened to be closed for "vacation" from January 1, 2015, through sometime in April 2015. The district court found that any competition between American West and Southwest did not begin until Southwest's Alamogordo store reopened in April 2015, nine months after Bowermeister left his employment with Southwest.

{11}     Southwest permanently closed its Alamogordo store "sometime" in April 2016. Southwest also closed its stores in Deming, Farmington, Hobbs, and Roswell in 2016 because they were "not making money" and closed its Texas stores in 2017.

**{12}** Southwest initiated this lawsuit in August 2016. Following a bench trial, the district court made the findings of fact reviewed here and ruled against Southwest on all of its claims. With respect to Southwest's claim for breach of the 2013 noncompete agreement, the district court concluded that the agreement was "larger and wider" than Southwest could reasonably require in a noncompete agreement, the agreement was not supported by consideration because Bowermeister received no increase in his hourly wage when he signed the agreement in 2013, and Southwest failed to establish that there were any damages proximately caused by competition from Bowermeister's America West store. The district court also rejected Southwest's claim for breach of the duty of loyalty. Although agreeing that Bowermeister acted improperly and in competition with Southwest when he purchased a gold coin for himself from a Southwest customer, the court found Southwest failed to offer any evidence of harm as a result of Bowermeister's conduct.

**DISCUSSION**

**{13}** Southwest contends that the district court erred as a matter of law (1) in concluding that Bowermeister's 2013 noncompete agreement was unenforceable; (2) in failing to consider whether a less restrictive noncompete agreement signed in 2012 at the outset of Bowermeister's employment should be enforced in place of the invalid 2013 agreement; and (3) in dismissing Southwest's claim for breach of the duty of loyalty, despite finding that Bowermeister's purchase of the gold coin was improper and in competition with Southwest.[1]

**{14}** Because Southwest does not attack the district court's extensive findings of fact, we will affirm the judgment if the district court has correctly applied the law to the facts found. *See Arvas v. Feather's Jewelers*, 1978-NMCA-075, ¶ 5, 92 N.M. 89, 582 P.2d 1302. We construe the district court's findings and the inferences that can be drawn from them in the light most favorable to the district court's disposition but review de novo the application of the law to those facts. *Crutchfield v. N.M. Dep't of Tax'n & Revenue,* 2005-NMCA-022, ¶ 28, 137 N.M. 26, 106 P.3d 1273; *Ponder v. State Farm Mut. Auto. Ins. Co.,* 2000-NMSC-033, ¶ 7, 129 N.M. 698, 12 P.3d 960.

**I.     The 2013 Agreement Not to Compete Was Unenforceable Under New Mexico Law**

**{15}** Southwest contends first that the district court erred in finding Southwest's 2013 noncompete agreement with Bowermeister unenforceable. The district court gave three reasons, concluding that any one of the three was sufficient to invalidate the agreement not to compete: (1) the 2013 agreement was unreasonably restrictive in terms of the length of time, the geographic area, and types of employment precluded; (2) Bowermeister received no consideration for the expanded 2013 noncompete

---

[1]Southwest also claims that the district court erred in denying its motion to compel discovery of American West's financial figures and customers served. Because we uphold the dismissal of Southwest's claims on grounds unrelated to proof of damages from violation of the noncompete agreement, we do not reach this issue.

agreement; and (3) Southwest offered no evidence to show that the decline of Southwest's business was caused by Bowermeister's competition rather than by the economic factors that led to Southwest's closing its other stores. We agree with the district court that the 2013 noncompete agreement imposed an unreasonably broad restraint on Bowermeister's ability to earn a living. Because we conclude the agreement was unenforceable on this basis, we do not address the two alternative grounds relied on by the district court.

{16}    The noncompete agreement that Southwest sought to enforce in the district court was signed by Bowermeister in June 2013 when his duties and work location were changed by Southwest from manning the counter in Southwest's Alamogordo precious metal purchasing store to working with mannequins in Las Cruces. The 2013 noncompete agreement provided that, for three years following the termination of employment, regardless of whether Bowermeister was dismissed by Southwest or resigned, Bowermeister could not establish, as investor, partner, or sole proprietor, or accept employment in any type of business engaged in by Southwest either anywhere Southwest had an internet presence or within twenty-five miles of any location where Southwest had a physical presence. Southwest testified at trial, and the district court found, that the internet presence encompassed virtually all locations. The noncompete agreement defined the businesses engaged in by Southwest to include gold purchasing, hosting parties, fundraising, loan businesses, including installment loan or pay loan businesses, any type of business related to moving mannequins or mannequin advertising, sign walking, sign holding, and any business related to or similar to those listed or to any business that "Southwest . . . may investigate with intent to participate [in]."

{17}    Our Supreme Court has recognized that covenants not to compete that restrict employment present competing principles: the freedom to contract and the freedom to work. *See Lovelace Clinic v. Murphy*, 1966-NMSC-165, ¶ 23, 76 N.M. 645, 417 P.2d 450. The public has an interest not only "in protecting the freedom of persons to contract and in enforcing contractual rights and obligations," but also in "seeing that competition is not unreasonably limited or restricted." *Id.* Our Supreme Court has balanced these competing principles by holding that a covenant not to compete included in a contract of employment creates legally enforceable rights and duties, so long as the restrictions imposed on the employee are reasonable. *Id.* ¶¶ 18-19. Restrictions on competition and encouraging employees to remain employed "are legitimate purposes," but even these purposes must be reasonably limited considering the circumstances. *Id.* ¶ 21. Whether the restrictions are reasonable "depends on the facts of a particular case." *Bowen v. Carlsbad Ins. & Real Est., Inc.*, 1986-NMSC-060, ¶ 4, 104 N.M. 514, 724 P.2d 223. We look to the duration, distance, and scope of employment precluded by a covenant in assessing whether it is reasonable. The core inquiry is whether the limitations imposed on an employee's future employment are no greater in duration, distance, and scope than is necessary to protect the legitimate business interests of the employer. *Nichols v. Anderson*, 1939-NMSC-028, ¶ 9, 43 N.M. 296, 92 P.2d 781 ("The principle is firmly established that contracts only in partial restraint of any particular trade or employment, if founded upon a sufficient

consideration, are valid and enforceable if the restraint be confined within limits that are no larger and wider than the protection of the party with whom the contract is made may reasonably require." (internal quotation marks and citation omitted)).

**{18}** Southwest has provided only a conclusory argument to support its claim that the district court erred in concluding that the 2013 agreement was more expansive than necessary to protect Southwest's legitimate business interests, given the limited role Bowermeister played in Southwest's business during his employment. Southwest does not point to any authority that supports a three-year term, the restriction to twenty-five miles from every Southwest location in New Mexico and Texas, whether Bowermeister worked there or not, or the wide scope of types of businesses covered by the agreement, whether Bowermeister was employed in them or not, as reasonably necessary to protect an employer under circumstances similar to those here. There is a presumption of correctness in the district court's rulings, and it is the appellant's burden on appeal to clearly demonstrate any claimed error. *State v. Aragon*, 1999-NMCA-060, ¶ 10, 127 N.M. 393, 981 P.2d 1211. Southwest has not done that here.

**{19}** We note the district court's findings that Bowermeister was an entry-level employee who had been given very little training by Southwest for his job. Even the brief training Bowermeister was provided in the evaluation of precious metals at the outset of his employment was readily available to the public on the internet and was not a proprietary process unique to Southwest that merited protection from competition. Bowermeister did not have access to copyrighted or patented material; he did not learn any privileged information unique to Southwest's business or its mode of operating; he did not receive any customer lists or information from which he could selectively solicit Southwest's customers; he did not establish a close relationship with Southwest's customers, and he did not work in Southwest's internet business. Southwest accepts these findings of fact and does not point to any significant competitive advantage Bowermeister gained from his employment with Southwest that would require a three-year exclusion from employment in every type of business claimed by Southwest in such a broad geographic area. *See generally Lovelace Clinic*, 1966-NMSC-165, ¶ 25 (recognizing that "equity may refuse to enforce such contracts if great hardships will . . . be imposed on the covenantor and relatively small benefits would . . . accrue to the covenantee").

**{20}** Not persuaded that the district court erred, we affirm the district court's conclusion that the 2013 noncompete agreement was unreasonable and therefore unenforceable.

**II.      Southwest Failed to Preserve Its Argument That the 2012 Agreement Not to Compete Remained in Effect and Provided an Alternative to the 2013 Agreement**

**{21}** In its brief on appeal, Southwest argues that the district court erred in failing to enforce the original, somewhat narrower agreement not to compete Bowermeister signed when he was first employed by Southwest in 2012.

**{22}**     Our review of the record in the district court reveals no trace of the argument Southwest now raises on appeal. We note that Southwest attached only its 2013 agreement to its complaint. And during closing argument, Southwest did not ask the district court to enforce the 2012 noncompete agreement should the district court find the 2013 agreement unenforceable. Southwest did not file a motion for rehearing or reconsideration to bring this issue to the district court's attention. "To preserve an issue for review on appeal, it must appear that [the] appellant fairly invoked a ruling of the trial court on the same grounds argued in the appellate court." *Benz v. Town Ctr. Land, LLC*, 2013-NMCA-111, ¶ 24, 314 P.3d 688 (internal quotation marks and citation omitted).

**{23}**     Significantly, Southwest provides no citation in its briefs in this Court, as required by our rules, to where in the record of the district court proceedings this claim was preserved. *See* Rule 12-318(A)(4) NMRA (providing that appellate briefs must contain, "with respect to each issue presented, . . . a statement explaining how the issue was preserved in the court below, with citations to authorities, record proper, transcript of proceedings, or exhibits relied on"); *see also Lasen, Inc. v. Tadjikov*, 2020-NMCA-006, ¶¶ 15-16, 456 P.3d 1090 (explaining that when a litigant fails to adequately demonstrate where a claim or argument was preserved, appellate courts may decline to review that claim or argument on appeal).

**{24}**     Based on the foregoing, we decline to review this claim on appeal.

### III.     The District Court's Findings Support Dismissal of Southwest's Claim for Breach of an Employee's Fiduciary Duty of Loyalty

**{25}**     Southwest contends that the district court's findings of fact do not support dismissal of Southwest's claims for breach of fiduciary duty and breach of the duty of loyalty.[2] Southwest first claims that the district court is required to address each of a plaintiff's causes of action with separately identified findings and conclusions specific to that claim and that the court's failure to do so with regard to the breach of loyalty claim requires reversal. In the alternative, Southwest claims that the district court's findings conclusively establish the elements of its breach of loyalty claim and that, therefore, the district court erred as a matter of law in dismissing this claim. We disagree with both of Southwest's arguments and find no error in the district court's dismissal of this claim.

**{26}**     First, the district court's findings and conclusions adequately disclose how it arrived at its decision. Nothing more is required to permit meaningful appellate review. *See Kruskal v. Moss*, 1998-NMCA-073, ¶ 10, 125 N.M. 262, 960 P.2d 350 (holding that remand for additional findings is required only when the trial court's findings, with all inferences drawn in their favor, are insufficient to permit meaningful appellate review). We review all of the findings together, indulging all reasonable presumptions in favor of

---

[2]Southwest's brief lists these claims separately, but provides argument and authority solely only the duty of loyalty claim. We therefore address only that claim. *See Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 ("We will not review unclear arguments, or guess at what [a party's] arguments might be.").

upholding the judgment on appeal. *See Esquibel v. Hallmark*, 1978-NMSC-080, ¶ 6, 92 N.M. 254, 586 P.2d 1083. No particular format is required.

{27}   Guided by these principles, we turn to the findings of fact and conclusions of law entered by the district court to determine if they support dismissal of Southwest's breach of the duty of loyalty claim. The breach of the duty of loyalty, as tried by Southwest and decided by the district court, focused solely on Bowermeister's purchase of a single gold coin for his own account after a Southwest customer turned down Bowemeister's offer on Southwest's behalf.[3]

{28}   The district court found that Bowermeister's purchase of the gold coin for his own account was improper conduct and was in competition with his employer. This finding addresses two of the elements of cause of action for a breach of an employee's duty of loyalty: the existence of an employment relationship and conduct by the employee during that relationship in competition with the employer. *See Salter v. Jameson*, 1987-NMCA-047, ¶ 9, 105 N.M. 711, 736 P.2d 989 (recognizing that the duty of loyalty to an employer requires that. unless otherwise agreed, the employee may not compete with the employer during the term of the employment).

{29}   As is true in all types of fiduciary relationships, however, a breach of the duty of loyalty is actionable only if the employer establishes that it was harmed by the employee's breach of duty. *Moody v. Stribling*, 1999-NMCA-094, ¶ 27, 127 N.M. 630, 985 P.2d 1210. "[W]hen a party has the burden of proof on an issue and the party's requested findings on that issue are refused, the effect of the refusal is a finding against the party with the burden of proof." *Holloway v. N.M. Off. Furniture*, 1983-NMCA-028, ¶ 17, 99 N.M. 525, 660 P.2d 615. In this case, the district court rejected Southwest's request to find that it had suffered harm, and the absence of harm was a sufficient basis, standing alone, for rejecting Southwest's claim. We therefore affirm the district court's dismissal of this claim.

**CONCLUSION**

{30}   For the reasons stated, we affirm the district court's judgment dismissing all claims.

{31}   **IT IS SO ORDERED.**

**JANE B. YOHALEM, Judge**

**WE CONCUR:**

**JACQUELINE R. MEDINA, Judge**

---

3Although Southwest's brief refers to "other possible related incidents," the district court's findings and Southwest's argument on appeal relies on a single incident.

**ZACHARY A. IVES, Judge**