1998-NMCA-155

966 P.2d 777

Michael **FAMIGLIETTA** and Frances Famiglietta, Husband and Wife, Plaintiffs–Appellees/Cross–Appellants,

v.

**IVIE–MILLER ENTERPRISES, INC.,** Defendant–Appellant/Cross–Appellee.

No. 17922.

Court of Appeals of New Mexico.

Aug. 19, 1998.

Certiorari Denied, No. 25,361, Oct. 13, 1998.

Roger Moore, Law Office of Roger Moore, Albuquerque, for Appellees/Cross–Appellants.

Michael L. Danoff, Albuquerque, for Appellant/Cross–Appellee.

## OPINION

FLORES, Judge.

{1} This case involves the sale of a tortilla chip distributorship business. Michael and Frances Famiglietta (Sellers) entered into an agreement to sell the distributorship to Ivie–Miller Enterprises, Inc. (Buyer). Sellers filed a complaint against Buyer alleging that Buyer breached the contract by failing to pay installment payments due under the contract and promissory note that was executed at the time the business was purchased. Buyer answered and counterclaimed, arguing that Sellers were not entitled to recover under the contract because Michael Famiglietta (Famiglietta) breached the contract first. In addition, Buyer argued that Sellers were also liable for additional damages under alternate theories of breach of contract, negligent misrepresentation, fraudulent inducement, and prima facie tort. The trial court ruled that although Famiglietta breached the contract, the breach was not material. Therefore, the trial court ruled that Buyer was liable for the remaining balance due under the contract and promissory note. Buyer appeals the trial court's ruling. Sellers also cross-appeal, arguing that the trial court should have awarded them attorney fees. For the reasons that follow, we affirm in part, reverse in part, and remand.

## FACTUAL BACKGROUND

{2} On January 29, 1993, the parties entered into a contract for the sale of a Mi Ranchito Mexican Food Products distributorship for $50,000 plus interest. Buyer agreed to pay Sellers an initial payment of $10,000 and the remaining $40,000 plus interest by three subsequent installment payments. The contract also provided that the agreement was contingent upon Famiglietta's obligation to remain with the distributorship for a period of five years in the capacity of sales. About eighteen months after the parties entered into the contract, Famiglietta left the distributorship.

{3} Buyer's president, Bob Meek, testified that during his initial discussions concerning the purchase of the distributorship he told Famiglietta that he would only consider purchasing the business if Famiglietta remained with the business because Famiglietta had been in the business for many years, was good at the job, and knew the market. Mr. Meek also testified that it was important for Famiglietta to remain with the distributorship because he knew the store personnel, was an aggressive salesman, and was able to maintain display space in the stores.

{4} Famiglietta testified that he was aware of his obligation to stay with the distributorship for five years. He also acknowledged that he did not fulfill his five-year obligation even though Buyer wanted him to remain with the business because of his experience and contacts in the business. Famiglietta also recognized that at the time the parties entered into the contract his agree-

ment to remain with the distributorship for five years was a material part of the contract.

{5} Famiglietta testified that he was contemplating opening his own bagel shop. He also testified that his relationship with Mr. Meek was good and he could just orally inform Buyer that he was leaving. Famiglietta first told Buyer that he was leaving the distributorship in June of 1994. Famiglietta testified that Mr. Meek said he understood, but was concerned about other employees taking over Famiglietta's routes.

{6} Mr. Meek testified at trial that he did not agree to release Famiglietta from his five-year obligation and he informed Famiglietta that Famiglietta would be breaking the contract if he left. Mr. Meek further testified that from the time Famiglietta informed him of his desire to leave until he finally left on June 24, 1994, that Mr. Meek informed Famiglietta at least three times that Famiglietta would be breaking the contract by leaving the business. On the day that Famiglietta left, Mr. Meek testified that he told Famiglietta he would probably be hearing from Buyer's attorney. Famiglietta claimed, however, that Mr. Meek voiced no objections to Famiglietta's departure during their conversations in June of 1994. Famiglietta contended that if Buyer had objected he would have remained with the distributorship.

{7} Less than six months later in December of 1994, Buyer's attorney sent a letter to Famiglietta informing him that his departure from the business was a breach of the contract and that the contract should be rescinded. Buyer's letter also offered to return the business to Famiglietta within 60 days. Famiglietta acknowledged receiving the letter but elected not to return to the business. Famiglietta also maintained that the December letter was the first time he was informed of Buyer's objections to Famiglietta's departure from the business.

{8} Mr. Meek testified at trial that Famiglietta's absence from the distributorship caused a substantial decrease in business. In particular, Mr. Meek maintained that in Famiglietta's absence the distributorship's volume of business decreased and the distributorship suffered $10,000 in lost profits. Mr.

Meek also claimed that the value of the distributorship dropped in value from $50,000 to $29,000. However, Mr. Meek also acknowledged that the distributorship realized a profit during the time that it was owned by Buyer. Mr. Meek also conceded on cross-examination that much of the loss of sales after Buyer purchased the distributorship was the result of individual corporate retailers' decisions to reduce or terminate the Mi Ranchito product line and that those decisions were not related to Famiglietta's departure from the distributorship. There was also evidence showing that declining sales were already occurring during the time that Famiglietta was working for the distributorship.

{9} Because Buyer refused to pay any of the remaining installment payments due under the contract and promissory note, Sellers ultimately filed suit against Buyer to recover the remaining amounts due. Buyer answered, asserting several affirmative defenses and counterclaims. While the case was pending in the district court, Buyer attempted to sell the Ivie–Miller corporate assets, including the Mi Ranchito distributorship, to a third party. Although Sellers sought injunctive relief from the district court to stop the sale, ultimately Buyer was allowed to sell all of its corporate assets. At the hearing to resolve Sellers' request for injunctive relief, Mr. Meek indicated that the distributorship was valued at $29,000. However, at the time of trial, Mr. Meek testified that no value was attached to the distributorship when it was sold with the rest of the corporate assets. In any event, the trial court stated at trial that it would not consider the effect of the sale of the business in reaching its decision because Famiglietta did not present any evidence on the point.

{10} After trial, the trial court ruled that although Famiglietta breached the contract by leaving the business before his five-year obligation expired, the breach was not material. The trial court's findings also focused on the fact that Buyer did not suffer any direct damage as a result of Famiglietta's breach. Therefore, the trial court ruled that Buyer was liable for the remaining amounts due under the contract and promissory note.

The trial court also ruled that the parties were responsible for their own attorney fees.

## DISCUSSION

### I. Buyer's Right to Rescind the Contract

{11} Buyer maintains that it should not be held liable for the outstanding balance due under the contract and promissory note because Famiglietta failed to fulfill his five-year obligation to work for the distributorship. In essence, Buyer argues that because of Famiglietta's conduct it should be entitled to rescind the contract. Buyer advances two theories in support of its claim for rescission.

#### A. Nonoccurrence of a Condition in the Contract

{12} Buyer begins by arguing that the trial court unnecessarily focused on whether Famiglietta's breach of the contract was material. Instead, Buyer suggests that Famiglietta's five-year obligation under the contract was a condition precedent to Buyer's continued performance of its obligations under the contract. *See Western Commerce Bank v. Gillespie*, 108 N.M. 535, 538, 775 P.2d 737, 740 (1989) (right to repudiate contract if condition precedent not met). Because Buyer characterizes Famiglietta's five-year obligation as a condition precedent, Buyer contends that the materiality of the five-year obligation was irrelevant. *See generally* E. Allan Farnsworth, II *Farnsworth on Contracts* § 8.2, at 345 (1990) (parties are not restricted by any test of materiality with regard to conditions in contract) [hereinafter *Farnsworth on Contracts* ].

{13} We first note our hesitation to accept Buyer's characterization of Famiglietta's five-year obligation under the contract as a condition precedent. *See Western Commerce Bank*, 108 N.M. at 537, 775 P.2d at 739 (condition precedent generally is an event that must occur subsequent to formation of contract which must occur before there is right to immediate performance). Many commentators and courts have noted the difficulty in classifying a condition in a contract as precedent or subsequent. *See, e.g., K.L. Conwell Corp. v. City of Albuquerque*, 111 N.M. 125, 129–30, 802 P.2d 634, 638–39 (1990); *Farnsworth on Contracts, supra,*

§ 8.2, at 347–51; *Restatement (Second) Of Contracts* § 224 cmt. e and § 230 cmt. a [hereinafter *Restatement* ]. In any event, we need not address the substance of Buyer's arguments on this point because Buyer failed to adequately preserve the issue below. Following the bench trial in this matter, Buyer's requested findings and conclusions framed the question for the trial court as one of material breach. Only after the trial court issued its findings and conclusions to the effect that Famiglietta's breach was not material did Buyer raise the notion that Famiglietta's five-year obligation was a condition of the contract unaffected by considerations of materiality. Indeed, Buyer did not even begin using condition-precedent terminology until the matter was briefed in this Court. Under these circumstances, we will not review Buyer's argument on appeal that the materiality of Famiglietta's breach was irrelevant. *See Cox v. Cox*, 108 N.M. 598, 602–603, 775 P.2d 1315, 1319–20 (Ct.App.1989) (where party's requested findings asked court to award alimony, party cannot challenge award of alimony on appeal but is limited to challenging amount of alimony); *Platero v. Jones*, 83 N.M. 261, 262, 490 P.2d 1234, 1235 (Ct.App.1971) (party cannot complain about findings he requested); *see also American Bank of Commerce v. United States Fidelity and Guar. Co.*, 85 N.M. 478, 478, 513 P.2d 1260, 1260 (1973) (party cannot change theory on appeal where alternate theories were not raised in trial court until submitted in requested findings three months after trial).

#### B. Uncured Material Breach

{14} Buyer also argues that if Famiglietta's five-year obligation simply was a promise in the contract, the uncured breach of that promise relieved Buyer of any further obligations under the contract. We agree that if Famiglietta committed a material breach of the contract which remained uncured, Buyer was not required to perform its remaining obligations under the contract. *See generally Farnsworth on Contracts, supra,* § 8.18; *see also Horton v. Horton*, 487 S.E.2d 200, 204 (Va.1997) (material breach excuses non-breaching party from performing his contractual obligations); *Ervin Constr. Co. v. Van*

*Orden,* 125 Idaho 695, 874 P.2d 506, 511 (Idaho 1993) (rescission available when party commits material breach which destroys purpose of contract).

{15} Here, the district court found that Famiglietta's breach did not cause Buyer any direct monetary damage. However, the existence or extent of monetary damage caused by a breach of contract is not necessarily dispositive of the question of materiality. *See Horton,* 487 S.E.2d at 204 (proof of specific amount of monetary damages not required when "breach was so central to the parties' agreement that it defeated an essential purpose of the contract"); *J.P. Stravens Planning Assocs., Inc. v. City of Wallace,* 129 Idaho 542, 928 P.2d 46, 49 (Idaho Ct.App. 1996) (where nonbreaching party seeks to be relieved of his obligations under the contract he must prove that breach was material but need not prove damages or amount of damages); *cf. Eldin v. Farmers Alliance Mut. Ins. Co.,* 119 N.M. 370, 379, 890 P.2d 823, 832 (Ct.App.1994) (Hartz, J., dissenting in part and concurring in part) (materiality depends on potential for breach to cause prejudice but does not require proof prejudice actually occurred).

{16} Although we believe the district court incorrectly analyzed the question of materiality, we recognize that New Mexico case law provides very little guidance on the subject. For example, the few New Mexico cases which discuss the materiality of a breach have focused on the facts of the particular case and have not provided general guidance on how materiality should be determined. *See, e.g., Montgomery v. Cook,* 76 N.M. 199, 204–05, 413 P.2d 477, 481 (1966); *Winrock Inn Co. v. Prudential Ins. Co.,* 1996–NMCA–113 ¶ 28, 122 N.M. 562, 928 P.2d 947. Understandably, the fact-specific nature of our case law is driven by the reality that the materiality of a breach is a specific question of fact. *See Lukoski v. Sandia Indian Management Co.,* 106 N.M. 664, 665, 748 P.2d 507, 508 (1988). But the district court's decision was flawed because it focused solely on the lack of direct damage flowing from the breach without considering other factors that are relevant to the question of materiality.

{17} The challenge presented by this case is to determine what constitutes a material breach of contract. Some courts have described a material breach as the "failure to do something that is so fundamental to the contract that the failure to perform that obligation defeats an essential purpose of the contract." *Horton,* 487 S.E.2d at 204. Put another way, a material breach "is one which touches the fundamental purpose of the contract and defeats the object of the parties in entering into the contract." *Ervin Constr. Co.,* 874 P.2d at 510. Other courts have noted that a material breach occurs when there is a breach of " 'an essential and inducing feature of the contract[ ].' " *Lease–It, Inc. v. Massachusetts Port Auth.,* 33 Mass. App.Ct. 391, 600 N.E.2d 599, 602 (Mass.App. Ct.1992) (quoting *Bucholz v. Green Bros. Co.,* 272 Mass. 49, 172 N.E. 101, 102 (Mass.1930)).

{18} The Restatement also provides a useful framework for analyzing whether a breach of contract is material. In particular, the Restatement sets forth five factors that courts should consider when deciding the materiality of a breach of contract. *See Restatement, supra,* § 241. One factor to examine is the extent to which the injured party will be deprived of the benefit he or she reasonably expected to receive from the contract. Another factor considers the extent to which the breaching party will suffer forfeiture if the breach is deemed material. Courts should also explore whether the injured party can be adequately compensated in damages for the breach. A fourth factor focuses on the likelihood that the breaching party will cure his or her failure to perform under the contract. And the fifth factor evaluates whether the breaching party's conduct comported with the standards of good faith and fair dealing.

1. **Buyer was deprived of a significant benefit it reasonably expected to receive under the contract**

{19} Buyer argues that the contract unambiguously demonstrates that Famiglietta's promise to work for the distributorship for five years was a key reason why Buyer decided to buy the distributorship. Sellers

do not dispute the unambiguous nature of the contract. *See Nearburg v. Yates Petroleum Corp.*, 1997–NMCA–069, ¶¶ 7 & 8, 123 N.M. 526, 943 P.2d 560 (where parties do not argue that agreement is ambiguous appellate court may interpret agreement de novo as a question of law). Indeed, the contract language agreed to by the parties plainly states that the purchase of the distributorship was contingent upon Famiglietta's fulfillment of the five-year term. Under those circumstances, there is little doubt that Buyer was deprived of a significant benefit that it reasonably expected to receive under the contract. The fact that Buyer may not have suffered any direct monetary damage as a result of Famiglietta's breach does not alter our conclusion. *Cf. Restatement, supra*, § 241 cmt. b (all relevant circumstances must be considered as there is no simple rule based on ratio of contract price to monetary loss).

## 2. Sellers' forfeiture under the contract can be minimized

{20} As we discussed above, if a breach is found to be material, the non-breaching party is entitled to rescind the contract and is relieved of its obligations under the contract. However, as a practical matter, if the nonbreaching party is relieved of all of its obligations under the contract, the breaching party may suffer the forfeiture of benefits it should otherwise receive under the contract in exchange for obligations he has already fulfilled. The Restatement recognizes this dilemma by encouraging courts to look at the extent to which the breaching party will suffer forfeiture if the breach is deemed material. *See id.* § 241 cmt. d. In this case, however, Famiglietta's forfeiture is minimized by the fact that Buyer has already paid about half of the amount contemplated under the contract. Moreover, Buyer attempted to return the distributorship to Sellers but they refused. Under those circumstances, we do not believe that Sellers' forfeiture is so extensive that the breach should not be considered material.

{21} We recognize that Sellers challenge Buyer's right to retain and then sell the distributorship without having to pay the re-maining installments contemplated by the contract or account for the profits and proceeds Buyer received from the operation and sale of the business. *See Restatement, supra*, § 374 (party in breach is entitled to restitution for benefits he has conferred by way of part performance in excess of loss caused by breach). However, Sellers were unwilling to take back the business, and we agree that Buyer could properly sell the business in an effort to mitigate its damages. *See Elephant Butte Resort Marina, Inc. v. Wooldridge*, 102 N.M. 286, 292, 694 P.2d 1351, 1357 (1985) (nonbreaching party has duty to use reasonable diligence to mitigate damages). We also realize that Buyer contends it is entitled to recover the payments it has already made under the contract as part of its right to rescind the contract. However, Buyer's requested findings and conclusions did not seek this relief below. Therefore, this argument will not be considered on appeal. *See Woolwine v. Furr's, Inc.*, 106 N.M. 492, 496, 745 P.2d 717, 721 (Ct.App. 1987) (argument must be raised below to be considered on appeal).

## 3. Damages will not compensate Buyer for Famiglietta's breach

{22} The district court's own findings demonstrate that it would be difficult if not impossible to compensate Buyer with damages for Famiglietta's breach. Buyer could not demonstrate actual monetary damages that were caused by Famiglietta's early departure from the distributorship. However, the contract itself demonstrates that Buyer was not solely concerned with the extent to which Famiglietta could maintain or increase the profitability of the distributorship. For example, Buyer agreed in the contract that even if business declined to the point that the distributorship would be forced to lay off personnel, Famiglietta would be the last one to remain with the business. This supports Buyer's claim that it relied on Famiglietta to work with the distributorship because of his experience and contacts with local markets irrespective of whether Famiglietta was able to increase or maintain the distributorship's profitability. In short, the trust and reliance that Buyer placed in Famiglietta's agreement to work with the business

for five years is difficult if not impossible to value and compensate with monetary damages. *Cf. Restatement, supra,* § 241 cmt. c (difficulty of proving loss of benefit occasioned by breach affects adequacy of compensation).

### 4/5. Famiglietta refused to cure his intentional breach

{23} The last two factors to consider under the Restatement approach also demonstrate the materiality of Famiglietta's breach. The record leaves no doubt that although Famiglietta acknowledged that he did not fulfill his five-year obligation under the contract, he had no intention of curing that breach. The record also reveals that Famiglietta ignored Buyer's warnings not to leave the business and refused Buyer's request to return to the business. And despite Sellers' unwillingness to take the business back, Sellers nevertheless attempted to prevent Buyer from selling the distributorship. Faced with Famiglietta's willful breach of the contract and his steadfast unwillingness to cure that breach, in combination with the other factors discussed above, we are compelled to hold that the breach was material.

{24} We recognize that Famiglietta claimed he was not aware of Buyer's objections to his departure in June of 1994. However, the trial court apparently rejected this claim by rejecting Sellers' requested findings to the effect that Buyer waived or modified the five-year obligation by failing to object. *See Landskroner v. McClure,* 107 N.M. 773, 775, 765 P.2d 189, 191 (1988) (trial court's failure to make finding regarded as finding against party seeking to establish that fact). Moreover, Famiglietta's failure to return to the business after receiving the December letter also established Famiglietta's intentional, uncured breach of the contract. In short, the record in this case leads to one conclusion: Famiglietta's breach was material. As such, the district court erred by ruling that Buyer nevertheless was obligated to pay Famiglietta the remaining amounts due under the contract.

### II. Additional Damages for Famiglietta's Breach of Contract

{25} Buyer also maintains that he was entitled to additional damages that flowed from Famiglietta's breach of the contract in the form of lost profits. *See Camino Real Mobile Home Park Partnership v. Wolfe,* 119 N.M. 436, 443, 891 P.2d 1190, 1197 (1995) (party who breaches contract is "responsible for all damages flowing naturally from the breach"); *Shaeffer v. Kelton,* 95 N.M. 182, 187, 619 P.2d 1226, 1231 (1980) (damage awards should fully compensate injured party). However, as we noted above, Buyer's claim of lost profits resulting from Famiglietta's departure was contradicted by other evidence in the record. In light of these conflicts in the evidence, we affirm the district court's refusal to award Buyer damages for Famiglietta's breach. *See Zemke v. Zemke,* 116 N.M. 114, 118, 860 P.2d 756, 760 (Ct.App. 1993) (when there is conflicting evidence, appellate court views evidence in light most favorable to support the judgment).

### III. Buyer's Alternative Theories of Recovery

{26} Buyer suggests that it still should be allowed to recover damages from Famiglietta under Buyer's alternative theories of recovery for fraudulent inducement or negligent misrepresentation. However, Buyer failed to summarize in its brief any of the evidence that may have been relevant to its tort claims. Therefore, we decline to address these arguments on appeal. *See Martinez v. Southwest Landfills, Inc.,* 115 N.M. 181, 186, 848 P.2d 1108, 1113 (Ct.App.1993) (appellate court will not consider sufficiency of the evidence issues where appellant fails to "include the substance of all the evidence bearing upon a proposition" in the brief in chief). Moreover, Famiglietta testified that at the time he entered into the contract with Buyer he was not planning to leave the business. Under our standard of review for these factual issues, this testimony alone would support the trial court's rejection of Buyer's claims for negligent misrepresentation and fraudulent inducement. *See Zemke,* 116 N.M. at 118, 860 P.2d at 760.

### IV. Attorney Fees

{27} Buyer argues that because Famiglietta materially breached the contract,

Buyer is entitled to attorney fees under the contract. We agree. The contract explicitly called for attorney fees upon default by either party. We also award attorney fees on appeal. *See Dennison v. Marlowe,* 108 N.M. 524, 526–27, 775 P.2d 726, 728–29 (1989) (contractual provision which authorizes award of attorney fees includes fees on appeal). Therefore, we remand this matter to the district court for a reconsideration of Buyer's claim for attorney fees, which should include an award of attorney fees for this appeal. We also necessarily reject the claim that Sellers raise for attorney fees in their cross-appeal.

*CONCLUSION*

{28} We reverse the trial court's judgment holding Buyer liable for the remaining installment payments due under the contract. We affirm the trial court's judgment rejecting Buyer's claim for additional damages. We remand to the trial court for a determination of an appropriate attorney fee award for Buyer. Sellers' cross-appeal is affirmed.

{29} **IT IS SO ORDERED.**

PICKARD and ARMIJO, JJ., concur.