This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**CITY OF TUCUMCARI**,

     Plaintiff-Appellee,

v.                                  **No. 34,569**

**RAD WATER USERS COOPERATIVE**,

     Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF QUAY COUNTY**
**Gerald E. Baca, District Judge**

Doerr & Knudson, P.A.
Randy J. Knudson
Portales, NM

for Appellee

Garrett Law Firm, P.A.
Michael T. Garrett
Clovis, NM

for Appellant

**MEMORANDUM OPINION**

**FRENCH, Judge.**

{1}     The City of Tucumcari (Tucumcari) sold water to the RAD Water Users

Cooperative (RAD) pursuant to a water sale and purchase agreement (Contract). RAD objected to a proposed rate increase in 2012 and refused to pay. Tucumcari filed suit in district court requesting a declaratory judgment that its proposed rate increase was justified under the Contract, alleging that RAD was in breach of the Contract, and moving to set aside a 1987 decision of the district court (1987 Decision) that set forth factors to compute water prices between Tucumcari and RAD. The district court found that RAD breached the Contract, that Tucumcari's prices for water for 2012-2014 were reasonable, and awarded Tucumcari prejudgment interest and postjudgment interest at yearly rates of 15% and 8.75%, respectively. It also found that Tucumcari could set reasonable future water rates without reference to the 1987 Decision rate computation factors. On appeal, RAD argues that the district court committed error when it: (1) found that the Contract was terminated; (2) failed to require Tucumcari to use audited financial statements to compute water prices; (3) failed to enforce a provision of the Contract requiring Tucumcari to operate its water delivery system in an efficient manner; (4) allowed Tucumcari to calculate 2012 rates on the basis of 2010 data; (5) allowed Olga Morales to testify as an expert; (6) declined to apply to RAD the 4% water price increase that Tucumcari levied on its residential and consumer customers; and (7) awarded Tucumcari prejudgment and postjudgment interest. We affirm.

# BACKGROUND

{2}     For decades, Tucumcari sold water to RAD, a water cooperative that serves members in Quay County. The 1987 Decision set forth factors to calculate the price of water sold by Tucumcari to RAD.[1]

---

[1]The factors provided in the 1987 Decision are as follows:

1.     The . . . RAD contract water rates shall be adjusted each year with new rates going into effect on the anniversary date of the contract. Rates shall be based on and figured as follows:

a.     [Tucumcari] shall be allowed to include in its costs the costs of administering the water department [of Tucumcari], warehousing parts for the water department, producing water, distributing water, and that portion of the laboratory costs which is directly attributable to the water department. . . .

b.     The costs shall not include capital improvements to the system.

c.     In addition, the cost shall include a figure for depreciation, and the interest expense for bonds directly benefitting the water department.

. . .

f.     The basic cost amounts to be adjusted shall be these amounts found in [Tucumcari's] audited financial statements. [RAD], their accountants, and lawyers shall be allowed to examine the [Tucumcari] water department accounts and records upon reasonable notice to [Tucumcari].

g.     Once all adjustments have been made to expenses, ninety [percent] (90%) of the costs of administration shall be deducted since that cost is not properly charged to the contract water users.

3

{3}    In 2010, Tucumcari and RAD entered the Contract. The Contract provided for a fixed rate of $2.00 per one thousand gallons of water delivered from January 1, 2010 through June 30, 2011, and $2.19 per one thousand gallons delivered from July 1, 2011, through June 30, 2012. For the remainder of the ten-year term of the Contract, the water rate was not fixed. Instead, pursuant to the Contract, the "cost of producing water [was to] be calculated based on the costs for . . . :

Administration of water department (10%)
Producing water
Distributing water
Laboratory costs directly attributable to the water department
Warehousing parts for the water department
Depreciation attributable to water department only
Interest on bonds directly benefitting water department."

The underlying cost amounts were to be those "found in [Tucumcari's] audited financial statements." The Contract called for Tucumcari to "operate and maintain its system in an efficient manner[,]" recompute the cost of producing water yearly within sixty days of June 30, and give notice of rate changes sixty days before taking effect.

{4}    In June 2012, Tucumcari sent notice to RAD of a rate increase to $2.81 per one thousand gallons. RAD did not pay the increased rate. Tucumcari filed suit, seeking: (1) a declaratory judgment that the rate increase was allowable under the Contract and calculated in accordance with the terms of the Contract; (2) damages for breach of the

Contract; and (3) to set aside the 1987 Decision that set forth water pricing factors. After trial, the district court found that RAD was delinquent in its payments to Tucumcari and had breached the Contract. It ordered RAD to pay Tucumcari the rates billed for 2012-2014,[2] and prejudgment and postjudgment interest at the rates of 15% and 8.75%, respectively. The district court, relying on the stipulation of the parties that the dispute in this case was controlled by the Contract and not the 1987 Decision, found that Tucumcari could set future "reasonable" rates without reference to the factors set forth in the 1987 Decision. This appeal timely followed.

**STANDARD OF REVIEW**

{5}     "We review the findings of fact of the district court under a deferential, substantial evidence standard and review the application of the law to the facts de novo." *KidsKare, P.C. v. Mann*, 2015-NMCA-064, ¶ 9, 350 P.3d 1228. "Substantial evidence is such relevant evidence that a reasonable mind would find adequate to support a conclusion." *Ponder v. State Farm Mut. Auto. Ins. Co.*, 2000-NMSC-033, ¶ 7, 129 N.M. 698, 12 P.3d 960 (internal quotation marks and citation omitted). A substantial evidence review does not allow us to re-weigh the evidence; instead, we

---

[2]By the time of the trial, Tucumcari had issued unpaid rate increases to RAD for 2013 and 2014 in addition to the original unpaid 2012 rate increase.

determine whether the findings are supported by evidence that a reasonable mind could accept as adequate to support a conclusion. *In re Rescue EcoVersity Petition*, 2013-NMSC-039, ¶ 19, 308 P.3d 125. We view the evidence favorably to the findings of the district court. *State ex rel. King v. B & B Inv. Grp., Inc.*, 2014-NMSC-024, ¶ 12, 329 P.3d 658. We review the district court's conclusions of law de novo. *Mem'l Med. Ctr., Inc. v. Tatsch Constr., Inc.*, 2000-NMSC-030, ¶ 20, 129 N.M. 677, 12 P.3d 431.

**DISCUSSION**

**A.** **Substantial Evidence Supported the District Court's Finding That RAD Materially Breached the Contract**

{6}     RAD contends that Tucumcari should not be excused from further performance under the Contract and, therefore, the Contract controls how future water rates are calculated. RAD argues the Contract remains in full effect because Tucumcari did not request that the district court terminate the Contract and also seems to argue that there was no material breach under the Contract that would excuse Tucumcari from further performance.

{7}     RAD's argument that the Contract remains in full effect because Tucumcari did not sufficiently plead for it to be terminated fails because substantial evidence supports the opposite conclusion. Tucumcari pleaded that it was entitled to "all consequences" resulting from RAD's breach of the Contract and "such other relief" in addition to actual damages that the district court deemed just and proper. Moreover,

6

Tucumcari pleaded the district court to allow it to establish "new rate structures" for 2013 and after. Contrary to RAD's argument, substantial evidence supports the district court's understanding that the continuing effect of the Contract was at issue between the parties and, therefore, the issue was properly before the district court. *Cf. Credit Inst. v. Veterinary Nutrition Corp.*, 2003-NMCA-010, ¶ 19, 133 N.M. 248, 62 P.3d 339 ("Generally, the trial court may not grant judgment for relief which is neither requested by the pleadings nor within the theory on which the case was tried." (internal quotation marks and citation omitted)).

**{8}** RAD's argument that further performance under the Contract by Tucumcari was excused improperly by the district court also fails. At issue is whether RAD's refusal to pay for water at the increased rate requested by Tucumcari constituted a material breach of the Contract. "A material breach of a contract excuses the non-breaching party from further performance under the contract." *KidsKare*, 2015-NMCA-064, ¶ 20. Whether a breach is material is a question of fact. *Famiglietta v. Ivie-Miller Enters., Inc.*, 1998-NMCA-155, ¶ 16, 126 N.M. 69, 966 P.2d 777. Our Court has described a material breach as the "failure to do something that is so fundamental to the contract that the failure to perform that obligation defeats an essential purpose of the contract" and as a breach that "touches the fundamental purpose of the contract and defeats the object of the parties in entering into the

7

contract." *Id.* ¶ 17 (internal quotation marks and citation omitted).

**{9}** The Contract provided that Tucumcari would recompute the cost of RAD's water each year and set out the basic formula for computing that cost. RAD was responsible for monthly payments. The Contract did not contain a provision for dispute resolution. By the time the district court issued its decision in this case, Tucumcari had issued annual rate increases for 2012, 2013, and 2014. Under the Contract, RAD bore the responsibility to pay for the water it received from Tucumcari. The major, perhaps sole, benefit of the Contract for Tucumcari was payment for the water it supplied. RAD's breach constituted a failure that touched the fundamental purpose of the Contract and, put another way, defeated the object of the Contract. Therefore, substantial evidence supported the finding that Tucumcari was excused from further performance under the Contract because of RAD's material breach of the contract. *See id.* ¶ 17 (stating that a breach is material when it "touches the fundamental purpose of the contract and defeats the object of the parties in entering into the contract." (internal quotation marks and citation omitted)).

**B.      Tucumcari's Billed Rates Were Reasonable**

**{10}** RAD makes three separate arguments for reversal that, in essence, seem to challenge the district court's conclusion that RAD was responsible to pay the rate increases billed by Tucumcari for 2012, 2013, and 2014. RAD contends that, contrary

8

to the Contract, Tucumcari: (1) did not use independently audited figures to compute RAD's water rate for 2012; (2) did not operate its water system in an efficient manner, as required under the Contract; and (3) used 2010 data to calculate 2012 water rates instead of 2011 data. We globally address these arguments, all of which are somewhat underdeveloped and/or unclear. To the extent that RAD's arguments are underdeveloped or unclear, we cannot review them. *See Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53 ("[Appellate courts] will not review unclear arguments, or guess at what a party's arguments might be." (alteration, internal quotation marks, and citation omitted)), *cert. denied*, ___ U.S.___, 134 S.Ct. 1787, (2014). We review the argument that we can discern: RAD seems to argue for reversal because Tucumcari's inadequate performance under the Contract excused RAD's failure to pay the increased rates or, put another way, because Tucumcari was not entitled to the increased rates that it billed RAD under the Contract. We observe that although RAD's arguments imply that, in RAD's opinion, Tucumcari failed to meet its obligations under the Contract, RAD did not countersue for any breach by Tucumcari.

{11}    The rates charged to RAD by Tucumcari were supported by the evidence adduced at trial. The director of finance for the City of Tucumcari, Dennis Dysart, testified in detail that when he calculated RAD's cost of water, he did so in accordance

with the factors and terms in the Contract. Moreover, he testified that the cost amounts used were from the City's audited financial statements, and that he used audited numbers. He also testified that the use of the earlier figures (complained of on appeal by RAD) worked in RAD's favor because the later figures resulted in a significantly higher cost to RAD.

{12}   The expert witnesses for both Tucumcari and RAD provided testimony in support of Tucumcari's billed rates. RAD's expert witness, Carl Brown, testified that even adjusting for inefficiencies caused by arguably excessive water loss in the water system, the rate charged by Tucumcari was justified. He further testified that he calculated rates under the Contract that were higher than those billed by Tucumcari and that, in a letter to RAD, he recommended that RAD accept the rate calculations offered by Tucumcari. Tucumcari's expert witness, Olga Morales, testified that Tucumcari's billed rates for 2012-2014 were reasonable in relation to water rates throughout New Mexico. Upon review of the evidence, we decline to reverse the district court's conclusion of law that RAD is responsible to pay for the water it used in 2012-2014 at the reasonable rates billed by Tucumcari on the basis of RAD's contentions that Tucumcari did not use independently audited figures to compute RAD's water rate for 2012, did not operate its water system efficiently, and used 2010 data to calculate 2012 water rates.

10

**C.  Admission of the Expert Testimony of Olga Morales Was Not Reversible Error**

{13}    RAD contends that the admission of Olga Morales as an expert witness for Tucumcari was reversible error. However, RAD did not, in its brief in chief, make any argument in support of this contention. Instead, without application to this case, RAD reviewed cases that discuss expert admissibility requirements under the New Mexico and Federal rules of evidence. We will not review undeveloped arguments and will not guess at what a party's arguments might be. *See Elane Photography*, 2013-NMSC-040, ¶ 70 (stating that an appellate court will not "review unclear arguments, or guess at what a party's arguments might be" (alteration, quotation marks, and citation omitted)). Accordingly, we decline to find reversible error on the basis of the admission of Olga Morales as an expert witness.

**D.  Failure to Apply the Terms of the City of Tucumcari Ordinance Was Not Error**

{14}    In 2011, the City of Tucumcari adopted an ordinance establishing water rates for its residential and commercial customers. Defendant argues that the terms of that ordinance should apply to RAD. However, as RAD concedes, the ordinance does not apply to resale customers such as RAD. Based upon RAD's concession, we decline to find that the district court committed reversible error by not applying the terms of the inapplicable ordinance to RAD.

**E.    Neither the Award of Prejudgment Interest Nor Postjudgment Interest Was an Abuse of Discretion**

{15}    RAD contends that the district court's awards of prejudgment interest at the rate of 15% and postjudgment interest at the rate of 8.75% were abuses of discretion.

{16}    RAD argues that the award of postjudgment interest was an abuse of discretion because it was not awarded from the date of judgment—February 5, 2015—but from August 25, 2012. We disagree with RAD's premise in that we do not see evidence in the record that postjudgment interest was awarded from a date prior to the district court's judgment.

{17}    RAD contends that the district court's award of prejudgment interest was limited by statute to not more than 10% per year and that the district court abused its discretion in awarding Tucumcari 15% per year. Citing NMSA 1978, Section 56-8-4 (2004), RAD argues that a prejudgment interest rate of 10% was the maximum allowable without a finding that the judgment was based on tortious conduct, bad faith, or unreasonable delay.[3] Tucumcari argues that the award of prejudgment interest in this case falls under NMSA 1978, Section 56-8-3 (1983), which allows interest at a rate of up to 15% per year under certain circumstances.

---

[3]We observe that RAD seems to misconstrue Section 56-8-4, at least in part. However, because the correct interpretation of Section 56-8-4 is not important to the outcome or reasoning of this opinion, we decline to address RAD's interpretation any further.

**{18}** We agree with Tucumcari. Section 56-8-3(A) provides for interest of not more than 15% "on money due by contract[.]" It is established that in a contract case Section 56-8-3 supports an award of prejudgment interest. *See, e.g., Kueffer v. Kueffer*, 1990-NMSC-045, ¶ 8, 110 N.M. 10, 791 P.2d 461 (stating that Section 56-8-3 supports an award of prejudgment interest on a breach of contract claim). When the amount due is either fixed or determined by the contract, prejudgment interest should be awarded by right; when the amount is ascertainable, prejudgment interest can be awarded as a matter of discretion. *Kueffer*, 1990-NMSC-045, ¶ 8. In this case, the amount due was ascertainable and the district court was within its discretion to award prejudgment interest at the rate of 15%. We affirm the district court's awards of both prejudgment interest and postjudgment interest.

**CONCLUSION**

**{19}** For the reasons stated, we affirm.

**{20}** **IT IS SO ORDERED.**

_____
**STEPHEN G. FRENCH, Judge**

**WE CONCUR:**

_____

**MICHAEL E. VIGIL, Chief Judge**


_____

**TIMOTHY L. GARCIA, Judge**