This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-41111**

**SMITH & MARRS INC.,**

Plaintiff/Counterdefendant-Appellant/

Cross-Appellee,

and

**RICKEY SMITH,**

Third-Party Defendant-Appellant,

v.

**HOSKINS FAMILY ENTERPRISES, INC.,**

Defendant/Third-Party Plaintiff/

Counterclaimant-Cross-Appellant,

and

**MARK HOSKINS, individually and d/b/a
HOSKINS FAMILY ENTERPRISES; and
SUZANNE HOSKINS, individually and d/b/a
HOSKINS FAMILY ENTERPRISES,**

Defendants-Appellees/Cross-Appellants.

**APPEAL FROM THE DISTRICT COURT OF LEA COUNTY
Mark Sanchez, District Court Judge**

Kelly Hart & Hallman LLP
Elizabeth Geary
Midland, TX

for Cross-Appellee

Newell Valencia Law Firm
Michael Newell
Lovington, NM

Heidel, Samberson, Cox, & McMahon
Patrick McMahon
Lovington, NM

for Cross-Appellants

## MEMORANDUM OPINION

**WRAY, Judge.**

**{1}** Plaintiff Smith & Marrs Inc. (SMI), brought claims for debt and money due and foreclosure against Defendants Hoskins Family Enterprises, Inc. (HFE) and Mark and Suzanne Hoskins (collectively, Defendants), which arose from an oil, gas, and mineral business venture (the well interests). Defendants filed counterclaims against SMI for breach of duty and breach of contract, and a third-party claim for breach of fiduciary duty against Rickey Smith, an individual who plays roles in multiple relevant entities. After a bench trial, the district court entered judgment in favor of both parties. In these cross-appeals, SMI and Smith (collectively, SMI Parties) and Defendants challenge multiple factual and legal aspects of the district court's judgment relating to breach of duty, damages, individual liability, attorney fees, the applicability of the security interest, mortgage interest, and the dissolution of various entities. Finding no error, we affirm.

## BACKGROUND

**{2}** In 2006, Mark Hoskins began working as an operating partner with Smith. One of the entities involved in the Smith-Hoskins relationship was BHS Operations, Inc. (BHS). Smith owned between 60 and 70 percent of BHS, through various entities, while Hoskins owned 24 percent and a third party owned 10 percent. Title to the parties' multiple well interests were held in MMCP Leasing, Ltd. (MMCP or MMCP Leasing), which executed its partnership agreement in 2009.

**{3}** MMCP had one general partner, BHS, and four limited partners—Marrs & Smith, Ltd. (a 40 percent interest), HFE (a 19 percent interest), Rickey Smith Oil & Gas, Ltd. (approximately a 24 percent interest), and Michael Dennis (nearly a 10 percent interest). Hoskins and his wife were shareholders and directors of HFE, and Smith or his family had an interest in the Marrs & Smith, Ltd. and Rickey Smith Oil & Gas, Ltd. entities. Hoskins was the operator of the MMCP well interests until January 2012 when SMI took over. Smith was the president of both SMI and BHS.

**{4}** In December 2014, MMCP dissolved, but the entity first executed a note, mortgage, and security agreement to pay debts owed to SMI. Specifically, the note secured a $130,000 debt owed by MMCP to SMI, which arose from unpaid "joint interest billings"—amounts owed to the operator for the costs incurred working the wells. Smith signed the note and mortgage in favor of SMI on behalf of BHS, the general partner of MMCP. The same date, Smith, in his capacity as president of general partner BHS, also signed an assignment of MMCP's well interests from MMCP to each of the partners individually: Rickey Smith Oil & Gas, Ltd., HFE, Michael Dennis, Marrs & Smith, Ltd., and BHS. After dissolution, additional joint interest billings were sent to each interest owner to cover operating costs on the properties that were now individually owned. HFE paid no portion of the amount due on the note or the post-dissolution joint interest billings.

**{5}** SMI filed suit against HFE in 2015 to recover on the note and for the unpaid joint interest billings. The counterclaims, third-party claim, and additional parties followed over the years before the bench trial was held in 2018. At trial, SMI continued to argue that HFE did not pay past operating costs on the note or the post-dissolution operating costs that were reflected in the joint interest billings. HFE argued that Hoskins never agreed to the note and mortgage, Smith exceeded his authority, and the SMI Parties breached a duty to reasonably operate the well interests, which resulted in millions of dollars of lost profits.

**{6}** The district court concluded that (1) "[t]he promissory note and mortgage are valid and can be enforced"; (2) MMCP defaulted on its obligation to pay SMI; (3) HFE's 24.25 percent interest in MMCP, or $31,525, is subject to SMI's lien for the outstanding debt and attorney fees of $3,152.50; (4) HFE additionally owed SMI $370,823 for the unpaid joint interest billings but that amount was not secured by the mortgage and was subject to a $2,200 reduction; (5) SMI breached a duty to operate in a reasonably prudent manner, which damaged HFE in the amount of $350,000; and (6) Smith breached duties to HFE and damaged HFE in the amount of $50,000. The district court additionally determined that SMI could foreclose on HFE's 24.25 percent interest but that "[p]roof of the amount or illegality of the rate of interest called for in the promissory note was indefinite and insufficient." Ultimately, judgment was entered in favor of both parties, HFE owed SMI $18,623 after offsets; Smith individually owed HFE $50,000.00; and SMI was entitled to foreclose on HFE's interest in the former MMCP well interests in order to recover the amount owed on the note. Both parties appeal.

## DISCUSSION

**{7}** Between them, the parties raise six categories of issues in this Court. We address the appeals, and the issues raised in each, in turn.

## I. The SMI Parties' Appeal

**{8}** The SMI Parties challenge the district court's duty and breach determinations, Smith's individual liability, and the applicability of the note and mortgage. We observe

that this is a memorandum opinion prepared for the benefit of the parties to address only the arguments that the parties have raised, and this opinion should not be read to analyze or approve any issue not explicitly discussed. *See Maralex Res., Inc. v. Gilbreath*, 2003-NMSC-023, ¶ 21, 134 N.M. 308, 76 P.3d 626 ("[C]ases are not authority for propositions not considered."). We begin with The SMI Parties' arguments related to the duty of a reasonably prudent operator.

## A.     Breach of the Duty of a Reasonably Prudent Operator and Damages

{9}     The SMI Parties argue that the evidence did not support any breach of duty by SMI or damages and that monetary damages are not recoverable for such a claim. Oil and gas producers have an implied duty in equity "to make diligent efforts to market the production in order that the lessor may realize on his royalty interest." *Davis v. Devon Energy Corp.*, 2009-NMSC-048, ¶ 35, 147 N.M. 157, 218 P.3d 75 (internal quotation marks and citation omitted). The SMI Parties specifically contend that (1) this duty applies only "to disputes related to leases" and in the present case there was no lease; (2) no evidence supported a breach of any duty or damages; and (3) the only available damages for any breach would be cancellation of a lease and not monetary damages. We review the SMI Parties' legal arguments de novo, *see Talbott v. Roswell Hosp. Corp.*, 2005-NMCA-109, ¶ 9, 138 N.M. 189, 118 P.3d 194, and consider whether substantial evidence supported the district court's findings, *see Aquifer Science, LLC v. Verhines*, 2023-NMCA-020, ¶ 22, 527 P.3d 667 ("Substantial evidence is relevant evidence that a reasonable mind would find adequate to support a conclusion."); *Moody v. Stribling*, 1999-NMCA-094, ¶ 37, 127 N.M. 630, 985 P.2d 1210 (explaining that if "the plaintiff establishes a right to compensatory damages for a particular harm, the amount of the plaintiff's award is determined in the same way regardless of the legal theory under which the plaintiff recovers" and reviewing the award for substantial evidence (internal quotation marks and citation omitted)).

## 1.     The Duty

{10}     The SMI Parties first argue that the duty of a reasonably prudent operator does not apply. As an initial matter, the SMI Parties maintain that in the district court, HFE argued only breach of a fiduciary duty and not breach of a reasonably prudent operator standard. To the contrary, however, in the counterclaim, HFE alleged that SMI "owed Hoskins and other non[]operators a duty to reasonably and prudently operate the" well interests. In opening argument, HFE asserted that damages were warranted because SMI and Smith did not "operate [the well interests] in a reasonably prudent manner." In the closing brief, although the focus was on a fiduciary duty, HFE nevertheless argued that "[t]he legal question here is whether the duty owed to Hoskins is a reasonably prudent operator standard or a fiduciary standard" and HFE requested a finding that SMI breached its duties. The SMI Parties, in their closing, outlined the law on the reasonably prudent operator standard. We therefore disagree with the SMI Parties' characterization of HFE's arguments relating to the duty of a reasonable operator as "seemingly a mitigation of damages defense" and continue our analysis of the district court's application of the standard.

**{11}** The SMI Parties contend that the reasonably prudent operator standard does not apply, based on our Supreme Court's analyses in *Davis* and *Continental Potash, Inc. v. Freeport-McMoran, Inc.* (*Potash*), 1993-NMSC-039, 115 N.M. 690, 858 P.2d 66. Specifically, the SMI Parties maintain that the duty of a reasonably prudent operator applies only when a lease exists. The *Potash* Court held that express contractual provisions "supersede[d] any implied obligation regarding operation of the mine and preclude[d] the implication of any implied covenants" because the implied obligations would be "inconsistent with the unambiguous language expressing the intention of the parties to extend the defendants absolute control over mining operations." *Id.* ¶ 59. The *Davis* Court, however, subsequently explained that courts may imply a covenant either (1) by "effectuating the parties' intentions by interpreting the written terms of an agreement and analyzing the parties' conduct"; or (2) by "stating that a duty imposed by law creates an obligation on one or more of the parties to the agreement." 2009-NMSC-048, ¶ 32. Thus, while the *Potash* Court considered a claim that was expressly controlled by the language of the contract, the *Davis* plaintiffs sought to impose an implied duty "in equity, without looking to the language of the agreements or other evidence of the parties' intentions." 2009-NMSC-048, ¶¶ 34-35 (citing *Darr v. Eldridge*, 1959-NMSC-093, ¶ 16, 66 N.M. 260, 346 P.2d 1041). In the present case, the SMI Parties admitted that no written contract controlled "the operation of the properties owned by MMCP" and that only "an oral contract between the parties existed." Thus, *Potash* does not foreclose HFE's claim and *Davis* allows for a duty implied by law absent a lease agreement.

**{12}** The SMI Parties nevertheless point to *Potash* to argue that the relationship between the parties in a joint-interest arrangement is more similar to the contractual relationships in *Potash* than to the traditional lessor-lessee relationship that is associated with the implied duty. The lessor-lessee relationship gives rise to the duty to reasonably operate because lessors give up the right to develop and use resources on their properties in return for royalty payments arising from the lessees' development and use of the resources. *See Darr*, 1959-NMSC-093, ¶¶ 13-14. For that reason, the lessee must "continue the work of development for production of oil and gas with reasonable diligence as to the undeveloped portion of the leased land" and "proceed with reasonable diligence, as viewed from the standpoint of a reasonably prudent operator, having in mind his own interest as well as that of the lessor, to market the product." *See Libby v. De Baca*, 1947-NMSC-007, ¶¶ 6-7, 51 N.M. 95, 179 P.2d 263 (internal quotation marks and citation omitted)).

**{13}** The SMI Parties argue that the arrangement in the present case is different from the lease in *Libby* because in *Libby*, the lessor received royalties and in the present case, the interest owners must pay joint interest expenses. The SMI Parties do not explain how the joint-ownership interest held by HFE is unlike a lessor's interest. *Libby* and *Darr*, read together, focus on the burdens borne by lessors—the inability to exploit their property while it was leased to another for operation. *See Libby*, 1947-NMSC-007, ¶ 6; *Darr*, 1959-NMSC-093, ¶¶ 10, 12-13. Such is the arrangement here. The individual interest owners have no right to develop and work the well interests and instead have entrusted the operation of the well interests to SMI. As a result, the SMI Parties have

not demonstrated error by the district court in applying the duty to reasonably operate under the present circumstances. *See Wirth v. Sun Healthcare Grp., Inc.*, 2017-NMCA-007, ¶ 30, 389 P.3d 295 (explaining that it is the burden of "appellants to clearly demonstrate that the [district] court committed error" (alteration, internal quotation marks, and citation omitted)).

## 2. The Evidence

**{14}** Despite the SMI Parties' differing view on appeal, the evidence at trial supported a conclusion that SMI breached the duty to reasonably operate and caused approximately $350,000 in damages to HFE. Hoskins testified that after SMI took over operating MMCP's well interests, operating expenses increased, production decreased, he had difficulty accessing information about the operation, and he was discouraged from requesting details. When SMI took over operations in early 2012, MMCP had assets valued at $1,371,063, and HFE's share of MMCP's bank balance was $73,477.50. No MMCP assets were distributed to HFE at the time of dissolution in 2014. The parties agreed at trial and the district court found that by the time MMCP was dissolved, HFE held a "24.25 percent interest in all properties owned by MMCP." Applying the agreed 24.25 percentage ownership interest to the assets owned by MMCP before SMI's breach and adding HFE's share of MMCP's bank account, results in approximately $409,000. The district court's total award was $350,000 damages against SMI and $50,000 against Rickey Smith individually. This total amount approximates HFE's interests at the time that SMI took over operations and compensates HFE for the tortious conduct of SMI and Smith. *See Davis v. Campbell*, 1948-NMSC-041, ¶ 18, 52 N.M. 272, 197 P.2d 430 ("Absolute certainty as to damages sustained is, of course, in many cases impossible; all that the law requires is that such damages be allowed as directly and naturally result from the injury."); *Saiz v. Belen Sch. Dist.*, 1992-NMSC-018, ¶ 34, 113 N.M. 387, 827 P.2d 102 ("Under our system of pure comparative fault, concurrent tortfeasors, generally, are severally liable for damages apportioned on the basis of the percentage of each tortfeasor's fault to the total fault attributed to all persons.").

**{15}** The SMI Parties do not explain why this evidence is insufficient to support the district court's findings as to breach of duty and damages. We do not reweigh evidence. *See Aquifer Science, LLC*, 2023-NMCA-020, ¶ 22 ("When considering a claim of insufficiency of the evidence, the appellate court resolves all disputes of facts in favor of the successful party and indulges all reasonable inferences in support of the prevailing party." (internal quotation marks and citation omitted)). Because the evidence, as we have described, supports a breach that caused a loss, the award of damages was supported by the evidence. *See Moody*, 1999-NMCA-094, ¶ 37.

## 3. Availability of Monetary Damages

**{16}** The SMI Parties additionally maintain that "New Mexico law does not provide for monetary damages as relief for a breach of the duty of a reasonably prudent operator" and cite *Libby* and *Darr* to argue that the only available remedy is the termination of a

lease agreement. In both cases, the lessor sought the cancellation of the lease. *Libby*, 1947-NMSC-007, ¶ 3; *Darr*, 1959-NMSC-093, ¶ 1. The *Darr* Court equitably cancelled the lease because "[d]amages would be conjectural and speculative" and the lessors should have the opportunity to "exploit the product from the well." 1959-NMSC-093, ¶ 20. Neither *Libby* nor *Darr* forecloses monetary damages in the present circumstances. *See Maralex Res., Inc.*, 2003-NMSC-023, ¶ 21 ("[C]ases are not authority for propositions not considered."). The SMI Parties offer no other authority to support the argument that monetary damages are not available if a loss is proven and damages will compensate the injured party. *See Moody*, 1999-NMCA-094, ¶ 37 ("The purpose of compensatory damages is to make the injured party whole by compensating it for losses." (internal quotation marks and citation omitted)). Because, as we have explained, a loss was proven that would compensate HFE, the district court did not err by awarding monetary damages.

## B. Individual Liability

**{17}** The SMI Parties challenge the district court's award against Smith individually for the same reasons that we have already considered and also because the SMI Parties contend that (1) no evidence supported individual liability, and (2) the damages award "appears to be wholly arbitrary and punitive without any legal basis." HFE contends that Smith did not preserve this argument. *See* Rule 12-321 NMRA (requiring that "[t]o preserve an issue for review" by this Court, parties must invoke a ruling on an issue in the district court). The SMI Parties, however, elicited an admission from Hoskins during trial that the breach of duty claim was brought against Smith "in his capacity as president of the operator," which was SMI. In closing argument, the SMI Parties asserted that Smith, "acting in his capacity as a principal of [SMI] did not owe a duty of good faith and fair dealing, nor a fiduciary duty to MMCP Leasing, and thus is not individually liable for the operation of MMCP Leasing properties." We therefore conclude that the SMI Parties preserved the issue.

**{18}** Nevertheless, we disagree with the SMI Parties' broad contention that under New Mexico law, individuals are not liable "for claims that arise based on actions taken in a representative capacity." To the contrary, "[o]fficers of corporations can be held personally liable when they commit intentional torts." *Kaveny v. MDA Enters., Inc.*, 2005-NMCA-118, ¶ 20, 138 N.M. 432, 120 P.3d 854; *see also Kreischer v. Armijo*, 1994-NMCA-118, ¶ 5, 118 N.M. 671, 884 P.2d 827 ("[A]n agent may be held individually liable for his own tortious acts."). HFE pleaded in the counterclaim that SMI, "and its principal Rickey Smith under produced oil and gas . . . while also incurring unnecessary and improper expenses" and SMI "and its principal Rickey Smith, intentionally operated the [p]roperties in a manner so that generating expenses would exceed revenues with the express design to force non-operator working interest owners such as Hoskins to assign their interest in the [p]roperties to [SMI]." HFE presented evidence to support these allegations, and the SMI Parties presented rebuttal evidence. The district court credited HFE's evidence, and as we have explained the $50,000 damages award attributed to Smith was also rooted in the evidence. We therefore affirm to the extent

that the evidence supported the district court's determination that Smith intentionally failed to perform the duties of a reasonably prudent operator.

**C.     The Applicability of the Note and Mortgage: Attorney Fees, the Security Interest, and Accumulated Interest on the Debt**

**{19}**    To understand the SMI Parties' remaining arguments, we pause to review and consider additional circumstances related to the damages award. In 2012, SMI took over operation of the well interests and sent joint interest billings to MMCP to cover expenses. In December 2014, MMCP executed the note and mortgage in relation to joint interest billings that MMCP had not paid and thereafter dissolved. But at dissolution, MMCP assigned to HFE, individually, a 24.25 percent interest in the assets of MMCP, including the well interests. SMI remained the operator of the properties, and HFE continued to receive "joint interest billings" from SMI for the operating costs.

**{20}**    At the time of trial, the SMI Parties argued that HFE owed two amounts. First, HFE owed its share of the amount owed on the note, $31,525, which related to MMCP's predissolution obligation on unpaid joint interest billings. Second, HFE owed $370,823.00 in unpaid post-dissolution joint interest billings. As we have set forth, the district court determined that (1) the note and mortgage secured the $31,525 and awarded 10 percent of that amount, $3,152.50, in attorney fees; and (2) "the amount or illegality of the rate of interest" on the amount secured by the note was not sufficiently proven. The district court also determined that HFE owed SMI $370,823.00 on the unpaid post-dissolution joint interest bills but that this amount was not secured by the mortgage. The SMI Parties challenge the amount of the attorney fee award, the limitation of the security interest to the original note amount, and the denial of interest on the note.

**{21}**    The SMI Parties argue that the district court limited attorney fees to the "date of sale" contrary to the mortgage's broad provision for attorney fees. Despite the district court's reference to "attorney[] fees to date of sale," the attorney fee calculation clearly relates to the attorney fee provision in the note. The note provided that "[r]easonable attorney[] fees shall be 10% of all amounts due unless either party pleads otherwise." The SMI Parties neither reference the note nor point to where an amount was "otherwise" pleaded. The fee award, $3,152.50, was calculated as a percentage of the amount owed on the note, $31,525. Because the district court limited the security interest to the $31,525 that HFE originally owed on the note, the broader mortgage provision was also limited to the amount of the note and could not support fees calculated on the entire debt that the SMI Parties claimed.

**{22}**    The SMI Parties also maintain that this finding was incorrect—that the mortgage also secured "future indebtedness," which the SMI Parties contend included the outstanding post-dissolution joint interest billings. This argument is based on the mortgage provision that secures "[a]ny and all indebtedness now or hereafter owing by [MMCP] to [SMI], and, although it is contemplated that [SMI] may make additional advances to [MMCP], [SMI] shall never be obligated to do so." The SMI Parties,

however, do not demonstrate where in the record a ruling was sought that the joint interest billings were secured by the mortgage. In opening argument, the SMI Parties referred to "two sources of damages"—the note and the joint interest billings. In closing, the SMI Parties did not argue that the joint interest billings were secured by the note or subject to the mortgage. In the motion to reconsider, the SMI Parties focused on HFE's lack of evidence to challenge the joint interest billings but did not raise the issue that is briefed before us on appeal.

{23}   Nor did the SMI Parties invoke a ruling from the district court on the remaining issue. On appeal, the SMI Parties contend that the district court improperly determined that "[p]roof of the amount or illegality of the rate of interest called for in the promissory [note] was indefinite and insufficient." The district court however, concluded that the SMI Parties, at the least, did not prove how much interest was owing. The SMI Parties do not point us to the evidence that was presented to the district court about the calculation of the interest due on the note. Instead, the SMI Parties request that this Court read the note and the mortgage together to determine when payments were due under the mortgage in order to calculate interest based on the interest rate set forth in the note. No such request, however, was made to the district court. The SMI Parties did not seek or calculate interest owing on the secured amount in the proposed findings of fact and conclusions of law or closing argument brief.

{24}   In order to preserve an issue for appeal, "it must appear that a ruling or decision by the [district] court was fairly invoked." Rule 12-321. The appealing party is obligated to include in its argument "a statement explaining how the issue was preserved." Rule 12-318(A)(4) NMRA. With regard to these two matters, the SMI Parties assert only that "SMI preserved this issue at the trial court by seeking the court's enforcement of the terms within the plain language of the [m]ortgage" and cite the complaint and the mortgage exhibit. We conclude that this assertion was insufficient to have alerted the district court to the issue raised on appeal. *See Ciup v. Chevron U.S.A., Inc.*, 1996-NMSC-062, ¶ 22, 122 N.M. 537, 928 P.2d 263 (observing that a purpose of preservation is "to alert the [district] court to a claim of error and give the court an opportunity to correct any mistake"). As a result, we do not disturb the district court's findings that the post-dissolution joint interest billings were not secured by the mortgage and that the SMI Parties did not offer sufficient "[p]roof of the amount . . . of interest called for in the promissory" note.

## II.   HFE's Appeal

{25}   Having addressed the SMI Parties' appellate issues, we turn to HFE's appeal. HFE raises three issues and argues that the district court (1) erroneously enforced the note and mortgage against HFE, rather than holding the SMI Parties to the dissolution provision of the MMCP amended partnership agreement; (2) improperly found that HFE owed the amounts due on the post-dissolution joint interest billings in light of the findings that the SMI Parties breached the duty to reasonably operate; and (3) calculated damages incorrectly. We address the dissolution issue first and the remaining two issues together.

## A.    Dissolution

**{26}**    We have already set forth the terms of the note and mortgage and facts surrounding the nearly simultaneous dissolution of MMCP. HFE's position is that Smith had no authority to enter into the note and mortgage on behalf of MMCP, based on two provisions of the MMCP limited partnership agreement. HFE argues that according to the MMCP limited partnership agreement, (1) MMCP could not incur debt in excess of $100,000 and therefore could not enter into the note and the mortgage for $130,000; and (2) assets were required to be liquidated and debts deducted before distribution but instead, the assets were improperly divided in the form of interest shares among the former partners. The SMI Parties respond that sufficient written consent of the interested partners permitted the execution of the note and mortgage. We agree with the SMI Parties.

**{27}**    The MMCP limited partnership agreement permitted amendment or alteration of its terms with the consent of the "required interest," which was defined as "more than 50% units of the [i]nterest of all [l]imited [p]artners." More than 50 percent of the interests of all limited partners approved a written document that (1) authorized Smith to "make adequate provisions for the payment of any outstanding indebtedness of [MMCP]"; and (2) "replace[d] and supersede[d] all prior agreements by and among the [p]artners related solely to the dissolution of MMCP." As we have explained, the note related to past operating costs that MMCP had not paid to SMI, which made those unpaid costs a debt of MMCP. Thus, to pay MMCP's debts, Smith was authorized to enter into the note and the mortgage, rather than liquidate the assets. As a result, the district court appropriately concluded that the note and mortgage were enforceable.

## B.    Expenses and Damages

**{28}**    HFE's last two arguments are related to each other. First, HFE contends that the district court "found an egregious intentional [breach of] contract yet still enforced the contract." Second, HFE argues that the $350,000 damages award has no basis and that the award should have been higher to account for HFE's evidence of expected profits and its calculation of lost assets. HFE did not preserve the first argument articulated on appeal—that the district court should have conducted a five-factor analysis to determine that the SMI Parties' breach was "material," and therefore, HFE "was relieved from its obligations" to pay the SMI Parties. *See* Rule 12-321(A). In the district court, HFE did not plead, argue, or propose findings and conclusions that it should be excused from performance because the SMI Parties materially breached a duty to reasonably operate the well interests.

**{29}**    While HFE contends in its second argument that the damages award for SMI's breach should have been higher based on the evidence that HFE presented, the district court was free to disregard HFE's evidence about expected profits, production that did not manifest while SMI was the operator, and an appropriate ratio of expenses to production. *See Bank of New York Mellon v. Luu*, 2019-NMCA-053, ¶ 18, 448 P.3d 625 (noting that "the district court, as the fact-finder, was free to reject [a party]'s version of

the facts"). HFE specifically disputed $2,200 of the joint interest billings, which the district discounted from the total joint interest billing amount owed. Otherwise, HFE did not challenge the expenses itemized on any of the joint interest billings. Having resolved HFE's objections, as we have explained, the district court's calculation of damages was supported by the evidence. *See Famiglietta v. Ivie-Miller Enter., Inc.*, 1998-NMCA-155, ¶ 25, 126 N.M. 69, 966 P.2d 777 (affirming the district court's refusal to award requested damages "[i]n light of the[] conflicts in the evidence").

**CONCLUSION**

**{30}** We affirm the district court.

**{31}  IT IS SO ORDERED.**

**KATHERINE A. WRAY, Judge**

**WE CONCUR:**

**MEGAN P. DUFFY, Judge**

**JANE B. YOHALEM, Judge**